UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HENRY VAWTER, et al., | CASE NO. C09-1585JLR |
| Plaintiffs, | ORDER ON CHASE AND MERS'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, et al., | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the court on Defendants JP Morgan Chase Bank, N.A. ("Chase") and Mortgage Electronic Registration Systems's ("MERS") motion for judgment on the pleadings (Dkt. # 11).  Chase and MERS request that the court dismiss with prejudice Plaintiffs Henry and Rose Vawter's claims against them pursuant to Federal Rule of Civil Procedure 12(c).  Defendant Quality Loan Service Corporation of Washington ("QLS") joins in the motion (Dkt. # 14).  Having considered the motion, as

well as all papers filed in support and opposition, and having heard the argument of

counsel, the court GRANTS judgment on the pleadings with respect to Chase and MERS

(Dkt. # 11) but DENIES judgment on the pleadings with respect to QLS (Dkt. # 14).

## II.   BACKGROUND[1]

This case involves alleged violations of the statutory requirements for the

nonjudicial foreclosure of a deed of trust.  The Vawters are an elderly couple living on a

fixed income in their home of over 38 years. (Compl. (Dkt. # 1) ¶ 2.1.)  After confronting

financial difficulties arising from mortgage payments, medical expenses, and necessary

plumbing repairs, the Vawters chose to refinance their home to help relieve some of their

monthly financial burden.  (*Id.*)  In late 2006 or early 2007, the Vawters were solicited

by, and began speaking with, Defendant Twin Capital about a possible refinance.  (*Id.* ¶¶

2.1-2.2.)  These discussions and a subsequent loan application culminated in the Vawters

executing an adjustable-rate note ("Note") in the amount of $328,000 with Defendant

Paul Financial, LLC ("Paul Financial"). [2]  (*Id.* ¶¶ 2.9, 2.13; Lowry Decl. (Dkt. # 22) Ex.

A (Note).)  The Note is secured by a deed of trust ("Deed of Trust"), which lists Paul

Financial as the lender, MERS as the beneficiary, "acting solely as a nominee for Lender

---

[1] On the present Rule 12(c) motion, the court must accept all factual allegations in the
Vawters' complaint as true and view them in the light most favorable to the Vawters.  *See
Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

[2] When reviewing a motion for judgment on the pleadings, the court may consider
documents that were either attached to the complaint or on which the complaint necessarily
relies.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  In reviewing the
present motion, the court has looked to those documents upon which the complaint necessarily
relies, including: the Note; the Deed of Trust; MERS's assignment of its beneficial interest to
Chase; and the notice of trustee's sale.

1   and Lender's successors and assigns," and First American Title Insurance Company

2   ("First American") as the trustee.  (Compl. ¶ 2.16.1[3]; Sullivan Decl. (Dkt. # 12) Ex. A

3   (Deed of Trust).)  The Vawters assert that they were not provided with the various

4   disclosures required by federal law in connection with the refinancing process, that they

5   did not understand the terms of the Note, including that it was an adjustable-rate note as

6   opposed to a fixed-rate note, and that they were charged improper fees.[4]  (Compl. ¶¶ 2.4,

7   2.9-2.11, 2.13.)

8          The Note has now changed hands from Paul Financial to Chase.  In March 2007,

9   Paul Financial notified the Vawters that Homecomings Financial would begin servicing

10  their loan.  (*Id*. ¶ 2.15.1.)  Shortly thereafter, Homecomings Financial notified the

11  Vawters that Washington Mutual Bank, which was subsequently acquired in part by

12  Chase, would take over the servicing of their loan.  (*Id*.)  The parties agree that Chase

13  now has possession of the Note, which has been endorsed in blank.  (Lowry Decl. Ex. A;

14  *see* Supp. Resp. (Dkt. # 29) at 2.)  The Vawters dispute, however, when Chase obtained

15  possession of the Note and characterize Chase in their complaint as merely the

16

17  _____

18       [3] The complaint includes two sets of paragraphs 2.15 and 2.16.  In this order, the court
     will refer to the first set as paragraphs 2.15.1 and 2.16.1 and the second set as paragraphs 2.15.2
19   and 2.16.2.

20       [4] These factual allegations give rise to the Vawters' causes of action for alleged violations
     of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Washington's Mortgage
21   Brokers Practices Act ("MBPA"), chapter 61.24 RCW.  (Compl. ¶¶ 3.10-3.12 (TILA), 3.13-3.14
     (MBPA).)  The court recites the factual underpinnings of these claims in summary fashion as the
22   Vawters do not plead these claims against Chase, MERS, or QLS.

1  "purported" holder of the Note, alleging that they "cannot properly ascertain its real role

2  in connection with their mortgage loan."[5]  (Compl. ¶ 1.6.)

3      The parties to the Deed of Trust also changed over time.  In April or May 2009,

4  MERS assigned its beneficial interest under the Deed of Trust to Chase.  (Sullivan Decl.

5  Ex. E; *see* Compl. ¶ 2.17.)  The Vawters acknowledge that MERS is listed on the Deed of

6  Trust as holding the beneficial interest, but contest whether MERS was actually entitled

7  to serve as the beneficiary, asserting that "[t]he entirety of MERS' representations about

8  its role and authority to act is false."  (Compl. ¶ 2.17; *see id.* ¶ 2.16.1.)  Before MERS

9  assigned its beneficial interest to Chase, however, Chase appointed QLS to replace First

10 American as trustee.  (*Id.* ¶ 2.17.)  The Vawters thus allege that QLS was not properly

11 appointed as the successor trustee (*id.* ¶ 2.17), and Chase and MERS concede in their

12 briefing that the timing of the appointment was in error (Reply (Dkt. # 11) at 9 n.4.)

13     The terms of the Note eventually resulted in "financial disaster" for the Vawters.

14 (Compl. ¶ 2.13.)  On an unspecified date, the Vawters defaulted on their payments under

15 the Note.  Although they attempted to negotiate a loan modification with Chase, the

16 Vawters allege that they did not receive "any sort of meaningful response."  (*Id.* ¶

17 2.15.1.)  The Vawters' default ultimately led to nonjudicial foreclosure proceedings on

18 their home.  (*Id.* ¶ 2.17.)  On May 28, 2009, QLS, ostensibly acting as trustee under the

19 _____

20     [5] These statements sit side-by-side with the Vawters' factual allegation that they
   attempted to work with Chase "to obtain an appropriate loan modification for months."  (Compl.

21 ¶ 2.15.1.)  The court, though bound to accept the Vawters' well-pleaded factual allegations as
   true for purposes of this Rule 12(c) motion, notes the apparent tension between these portions of

22 the complaint.

1 Deed of Trust, recorded a notice of trustee's sale ("Notice"), and also caused the Notice

2 to be posted at and mailed to the Vawters' residence.[6]  (Compl. ¶ 2.17; Sullivan Decl. Ex.

3 B (Notice of Trustee's Sale).)  The Notice scheduled the trustee's sale for August 28,

4 2009.  (Compl. ¶ 2.17; Sullivan Decl. Ex. B at 30.)

5 Prior to the trustee's sale, the Vawters filed this action in King County Superior

6 Court in an attempt to head off the nonjudicial foreclosure.  (Compl. ¶ 2.15.1.)  As the

7 Vawters describe it, after failing to obtain a loan modification from Chase, "they [had] no

8 choice but to file a lawsuit in order to obtain compensation for their losses and stop the

9 foreclosure sale."  (*Id*.)  To these ends, the Vawters were at least partially successful: the

10 trustee's sale has been discontinued.  In addition to a cause of action for temporary and

11 permanent restraint of the trustee's sale, the Vawters plead five other causes of action,

12 including claims for: (1) intentional infliction of emotional distress; (2) wrongful

13 foreclosure and breach of the duty of good faith under Washington's Deed of Trust Act,

14 chapter 61.24 RCW; (3) violations of TILA; (4) violations of the MBPA; and (5)

15 violations of Washington's Consumer Protection Act ("CPA"), chapter 19.86 RCW.

16 Defendants removed this action to federal court.

17

18

19

---

20 [6] In their complaint, the Vawters do not discuss a preceding notice of default.  Ordinarily,
21 a notice of default precedes a notice of trustee's sale.  *See* RCW 61.24.030(8).  A review of the
Notice suggests that a notice of default was delivered to the Vawters in late April 2009.
22 (Sullivan Decl. Ex. B at 31.)

1    Chase and MERS now move for judgment on the pleadings under Rule 12(c).  The

2    court heard argument on the motion on March 25, 2010.[7]  (*See* Dkt. # 27.)  At the

3    hearing, the court directed the Vawters to file a supplemental response addressing the

4    Note, which Chase and MERS submitted along with their reply.  The Vawters timely

5    filed their supplemental response.

6                              **III.    ANALYSIS**

7    **A.    Motion to Strike**

8        As a preliminary matter, Chase and MERS request that the court strike pages 25

9    through 35 of the Vawters' 35-page response, as well as Exhibit 1 attached to the

10   accompanying declaration of Melissa Huelsman.  (Reply at 6.)  Local Rules W.D.

11   Washington CR 7(e), which governs the length of motions and briefs, provides that

12   "motions to dismiss . . . and briefs in opposition shall not exceed twenty-four pages."

13   Local Rules W.D. Wash. CR 7(e)(3).  The Vawters' response substantially exceeds the

14   applicable 24-page limit, and they have not requested leave to file an over-length brief.

15   On this record, however, the court declines to strike the excess pages.  Though the

16   response does not comply with Local Rule CR 7(e), the court is persuaded that the ends

17   of justice are best served by considering the entire response.[8]  By contrast, the court

18

19

20       [7] Counsel for the Vawters and counsel for Chase and MERS appeared at the hearing

21   while counsel for QLS did not.

22       [8] In the future, if the Vawters fail to comply with the applicable provisions of Local Rule
     CR 7(e), the court will strike the excess pages.

ORDER- 6

1   strikes Exhibit 1 to the declaration of Ms. Huelsman.  Exhibit 1, which is a declaration

2   filed in a separate lawsuit, is not appropriate for consideration on this Rule 12(c) motion.

3   **B.      Rule 12(c) Legal Standard**

4           On a motion for judgment on the pleadings under Federal Rule of Civil Procedure

5   12(c), the district court must "accept all factual allegations in the complaint as true and

6   construe them in the light most favorable to the non-moving party."  *Fleming,* 581 F.3d at

7   925 (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).  The Rule 12(c)

8   standard is the same as the Rule 12(b)(c) standard.  *McGlinchy v. Shell Chem. Co.*, 845

9   F.2d 802, 810 (9th Cir. 1988); *see Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d

10  1219, 1223-24 (10th Cir. 2009) (applying *Twombly-Iqbal* standard on Rule 12(c)

11  motion); *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) (same).  "A district court

12  will render a judgment on the pleadings when the moving party clearly establishes on the

13  face of the pleadings that no material issue of fact remains to be resolved and that it is

14  entitled to judgment as a matter of law."  *Enron Oil Trading & Transp. Co. v. Walbrook*

15  *Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).  "Judgment may only be granted when

16  the pleadings show that it is beyond doubt that the plaintiff can prove no set of facts in

17  support of his claim which would entitle him to relief."  *Id.*  When reviewing a motion for

18  judgment on the pleadings the court may consider documents that were either attached to

19  the complaint or on which the complaint necessarily relies.  *See Lee*, 250 F.3d at 688.

20

21

22

ORDER- 7

**C.    Washington's Deed of Trust Act**

In 1965, the Washington legislature enacted the Deed of Trust Act ("DTA"), which created and governs statutory deeds of trust in Washington.  Wash. Laws of 1965, ch. 74; *see* 18 William B. Stoebuck & John W. Weaver, WASHINGTON PRACTICE, REAL ESTATE: TRANSACTIONS § 20.1, at 403 (2d ed. 2004) (hereinafter "STOEBUCK & WEAVER").  A deed of trust is a form of three-party mortgage, involving not only a lender and a borrower, but also a neutral third party called a trustee.  *See Buse v. First Am. Title Ins. Co.*, No. C08-0510MJP, 2009 WL 1543994, at *1 (W.D. Wash. May 29, 2009); 18 STOEBUCK & WEAVER, § 20.1 at 403; John A. Gose, THE TRUST DEED ACT IN WASHINGTON, 41 WASH. L. REV. 94, 96 (1966).  As Professors Stoebuck and Weaver explain, "[a] borrower or obligor incurs a debt or other obligation to a 'beneficiary' and, as security for that obligation, the 'grantor' conveys an estate in land to a third-party 'trustee.'"  18 STOEBUCK & WEAVER, § 20.1 at 403.  The trustee holds an interest in the title of the grantor's property on behalf of the lender, otherwise known as the beneficiary.

The DTA establishes the procedures and requisites for nonjudicial foreclosure.  In enacting the DTA, the Washington legislature sought to promote three primary goals: "(1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles." *Plein v. Lackey*, 67 P.3d 1061, 1065 (Wash. 2003); *see Cox v. Helenius*, 693 P.2d 683, 686 (Wash. 1985); Joseph L. Hoffman, Comment, COURT ACTIONS CONTESTING THE NONJUDICIAL FORECLOSURE OF DEEDS OF TRUST IN WASHINGTON, 59 WASH. L. REV.

323, 330 (1984).  In the event the borrower defaults on his or her debt or other obligation,

the beneficiary may direct the trustee to foreclose pursuant to a nonjudicial trustee's sale.

This is the key feature of the DTA.  Whereas a mortgage may only be foreclosed by

judicial sale, a deed of trust may be foreclosed nonjudicially under streamlined

procedures that avoid the burdens associated with petitioning a court.  18 STOEBUCK &

WEAVER, § 20.1 at 404.  Once a default on the secured obligation occurs, either the

beneficiary or trustee may initiate the nonjudicial foreclosure process by giving written

notice of default to the borrower and grantor.  RCW 61.24.030(8) (formerly RCW

61.24.030(7)).[9]  The notice of default must contain a range of information, which, *inter*

*alia*, advises the borrower and grantor that they may cure the default or contest the

default in court.  The notice of default further advises the borrower and grantor that

failure to cure the default within 30 days moves the process one step closer to the

possible loss of the property.  In line with this notice, if the borrower or grantor fails to

cure the default within 30 days of the notice of default, the trustee may begin the

nonjudicial foreclosure process by giving notice of trustee's sale to the borrower, grantor,

and others pursuant to RCW 61.24.040.  The trustee's sale must be set at least 90 days

out.  The trustee must also provide the grantor with a notice of foreclosure, which

---

[9]  Recently, the Washington legislature amended the DTA to add a handful of new
protections and safeguards for borrowers and grantors.  The Vawters acknowledge that these
amendments do not govern the nonjudicial foreclosure proceedings in this case.  (*See* Resp. at
19.)  Yet despite this recognition, the Vawters cite statutory provisions of the DTA that were
added by these amendments.  The court need not consider the effect of these amendments for
purposes of the present motion.

1   identifies the sums necessary to cure the default and the deadline to do so.  RCW

2   61.24.040(2).

3           The DTA permits the borrower or grantor, among others, to restrain a trustee's

4   sale by court action "on any proper legal or equitable ground."  RCW 61.24.130(1); *see*

5   *Brown v. Household Realty Corp.*, 189 P.3d 233, 235 (Wash. Ct. App. 2008); 18

6   STOEBUCK & WEAVER § 20.13, at 424-26; 27 Marjorie Dick Rombauer, WASHINGTON

7   PRACTICE: CREDITORS' REMEDIES – DEBTORS' RELIEF § 3.62 (2008) (hereinafter

8   "ROMBAUER").  The DTA does not define what constitutes proper grounds for restraint.

9   The statutory language, however, suggests a broad scope.  As one commentator explains:

10          Presumably "proper grounds" would include defenses to the default(s) such
            as payments having been made, lender liability issues, fraud, usury,
11          violation of truth in lending and consumer protection laws.  "Proper
            grounds" should also refer to non-technical flaws in the foreclosure
12          process—is the land used for agricultural purposes, is the alleged default
            actually a default under the terms of the documents, or have errors been
13          made in identifying the documents, real property, and defaults which are of
            sufficient magnitude to cause real confusion.

14   27 ROMBAUER § 3.62.  Courts must condition any restraint of the trustee's sale on the
15   applicant paying the clerk of court "the sums that would be due on the obligation secured
16   by the deed of trust if the deed of trust was not being foreclosed."  RCW 61.24.130(1).
17   Absent an interested party curing the default, "[t]his statutory procedure is 'the only
18   means by which a grantor may preclude a sale once foreclosure has begun with receipt of
19   the notice of sale and foreclosure.'"  *Plein*, 67 P.3d at 1066 (quoting *Cox*, 693 P.2d at
20   686); *see Brown*, 189 P.3d at 235-36.  A grantor's or beneficiary's failure to take

21

22

ORDER- 10

1    advantage of the presale remedies under the DTA may result in waiver of their right to

2    object to the trustee's sale.  RCW 61.24.040(1)(f)(IX); *Plein*, 67 P.3d at 1066-67.

3    **D.    Wrongful Foreclosure**

4          In their complaint, the Vawters allege a claim for wrongful foreclosure against

5    Chase and MERS.  (Compl. ¶¶ 3.7-3.8.)  Specifically, the Vawters assert:

6          Defendants Paul Financial, MERS, [Chase] and QLS had an obligation not
          to conduct or attempt to conduct a foreclosure which was in contravention
7          of Washington state law.  Plaintiffs maintain that these Defendants did try
          to foreclose on their home in contravention of Washington law and by
8          causing documents making false assertions about legal rights to be recorded
          in the records of King County, Washington.
9
10   (*Id.* ¶ 3.8.)  In support of this claim, the Vawters marshal a range of alleged problems

11   connected with the Deed of Trust, the Note, and the nonjudicial foreclosure process,

12   including: (1) that MERS cannot hold a beneficial interest under the Deed of Trust; (2)

13   that Chase prematurely appointed QLS as successor trustee; and (3) that Chase does not

14   hold the Note.  The Vawters, however, do not contest their default under the Note, they

15   concede that the trustee's sale has been discontinued, and they acknowledge that Chase

16   now has possession of the Note.

17         In Washington, at least two courts have concluded that the DTA does not

18   authorize a cause of action for damages for the wrongful institution of nonjudicial

19   foreclosure proceedings where no trustee's sale occurs.  *See Pfau v. Wash. Mutual, Inc.*,

20   No CV-08-00142-JLQ, 2009 WL 484448, at *12 (E.D. Wash. Feb. 24, 2009); *Krienke v.*

21   *Chase Home Fin., LLC*, 140 Wash. App. 1032, 2007 WL 2713737, at *5 (Wash. Ct. App.

22   2007); *see also Henderson v. GMAC Mortgage Corp.*, No. C05-5781RBL, 2008 WL

ORDER- 11

1733265, at *5 (W.D. Wash. Apr. 10, 2008) (holding that plaintiff's claim for wrongful

foreclosure under the DTA failed because, *inter alia*, no foreclosure occurred). In both

*Pfau* and *Krienke*, the courts rejected the argument that a grantor can maintain a damages

claim for wrongful institution of nonjudicial foreclosure proceedings where no trustee's

sale actually occurs. These courts underscored their view that there is simply no statutory

authority or case law to support such a damages claim. As the *Krienke* court explained:

> [T]here is no case law supporting a claim for damages for the *initiation* of
> an allegedly wrongful foreclosure sale. Moreover, there is no statutory
> basis supporting a claim for damages for wrongful *institution* of foreclosure
> proceedings. On the contrary, courts promote the [DTA's] objectives,
> declining to invalidate completed sales even where trustees have not
> complied with the statute's technical requirements.

*Krienke*, 2007 WL 2713737, at *5 (emphasis in original).

Here, the court agrees with the reasoning of *Pfau* and *Krienke* and concludes that

the Vawters have failed to pleaded a viable claim under the DTA and Washington law.

The Vawters' cause of action, though styled in the complaint as a claim for wrongful

foreclosure, is properly construed as a claim for wrongful institution of nonjudicial

foreclosure proceedings since the trustee's sale was discontinued. *See id*. When viewed

in this light, the Vawters' claim fails as a matter of law.

First, the Vawters have not identified any statutory provision of the DTA that

permits a cause of action for wrongful institution of foreclosure proceedings. Standing

alone, the fact that the DTA establishes procedures and requisites for the nonjudicial

foreclosure process does not necessarily give rise to a cause of action. The Vawters also

fail to point to any case law supporting their interpretation of the DTA.

1    Second, the Washington legislature, in enacting the DTA, established a

2    comprehensive scheme for the nonjudicial foreclosure process, including specific

3    remedies for grantors and borrowers facing the potential loss of their homes.  Interjecting

4    a cause of action for damages for wrongful institution of nonjudicial foreclosure

5    proceedings into the DTA's scheme would potentially upset the balance struck by the

6    legislature.  *Cf. Udall v. T.D. Escrow Servs., Inc.*, 130 P.3d 908, 913-14 (Wash. Ct. App.

7    2006) (reasoning that the common law of contracts is inapplicable to nonjudicial

8    foreclosure sales because, *inter alia*, applying the common law would interfere with the

9    DTA's "detailed set of procedures for nonjudicial foreclosure sales"), rev'd on other

10   grounds, 154 P.3d 882 (Wash. 2007).  Furthermore, to the extent the legislature intended

11   to permit a cause of action for damages, it could have said so.

12   Third, recognizing a cause of action for damages for wrongful institution of

13   foreclosure proceedings would potentially undermine the legislature's goal that the

14   nonjudicial foreclosure process remains efficient and inexpensive.  In this case, for

15   instance, the Vawters do not contest their default under the terms of the Note, but rather

16   seek to pursue a damages claim predicated on the nonjudicial foreclosure proceedings.

17   This approach would spawn litigation under the DTA for damages, thereby interfering

18   with the efficient and inexpensive nature of the nonjudicial foreclosure process, while at

19   the same time failing to address directly the propriety of foreclosure or advancing the

20   opportunity of interested parties to prevent wrongful foreclosure.  Although the court

21   recognizes that an action for damages might often have the incidental effect of stopping a

22

ORDER- 13

1    trustee's sale, as in this case, it is not the statutory method established by the Washington

2    legislature to restrain a sale.

3          Fourth, even assuming a cause of action for damages for wrongful institution of

4    nonjudicial foreclosure proceedings were to exist under the DTA, the court is not

5    persuaded that it could be maintained without a showing of prejudice.  *Cf. Amresco*

6    *Independence Funding, Inc. v. SPS Props., LLC*, 119 P.3d 884, 886-87 (Wash. Ct. App.

7    2005) ("Despite the strict compliance requirement, a plaintiff must show prejudice before

8    a court will set aside a trustee sale."); *Koegel v. Prudential Mutual Sav. Bank*, 752 P.2d

9    385, 387-89 (Wash. Ct. App. 1988) (declining to set aside trustee's sale despite trustee's

10   failure to comply with the DTA's notice requirements because plaintiff had not shown

11   prejudice).  The Vawters simply fail to allege in their complaint how they suffered

12   prejudice as a result of Chase's and MERS's actions.

13         On balance, these observations lead the court to follow the approach of *Pfau* and

14   *Krienke*.  The Vawters simply have not shown any reason to depart from the *Krienke*

15   court's conclusion that "there is no statutory basis supporting a claim for damages for

16   wrongful institution of foreclosure proceedings."  *Krienke*, 2007 WL 2713737, at *5.

17   The court is mindful that lenders must strictly comply with the DTA because the

18   nonjudicial foreclosure process removes many protections borrowers and grantors have

19   under a mortgage.  *Amresco*, 119 P.3d at 886.  Nevertheless, for the reasons discussed

20   above, it does not follow that a grantor or borrower can maintain a cause of action for

21   damages for violation of the DTA where the trustee's sale is discontinued.  Therefore, the

22   court concludes that Chase and MERS have established on the face of the complaint that

1    no material issue of fact remains to be resolved and that they are entitled to judgment as a

2    matter of law with respect to the Vawters' third cause of action for wrongful foreclosure.

3            Having rejected the Vawters' damages claim for wrongful institution of

4    nonjudicial foreclosure proceedings, the court next turns to consider the outstanding

5    issues raised by the Vawters in their complaint and briefing that touch on the nonjudicial

6    foreclosure process.  These issues principally concern which parties may participate in

7    the nonjudicial foreclosure process.  Although the court's foregoing conclusion obviates

8    the Vawters' damages claim, the court nonetheless addresses these issues because they

9    implicate, either in whole or in part, the underlying propriety of the nonjudicial

10   foreclosure process.  (*See* Compl. ¶¶ 3.1-3.4.)

11          1.  Loan Modification

12          In their complaint, the Vawters allege that Chase failed to provide any meaningful

13   response to their attempts to obtain a loan modification.  (Compl. ¶ 2.15.1.)  Chase now

14   argues that it had no obligation to modify the terms of the Vawters' loan and that any

15   failure on its part to work with the Vawters cannot serve as the basis for a lawsuit.  (Mot.

16   at 6.)  The Vawters do not disagree.  Rather, they state that they "have not asserted that

17   these Defendants or any others have a legal obligation to modify their mortgage loan."

18   (Resp. (Dkt. # 17) at 24; *see* Supp. Resp. at 3.)  In light of this representation, the court is

19

20

21

22

ORDER- 15

1    satisfied that Chase's alleged inaction in connection with the Vawters' attempt to modify

2    their loan do not form the basis of any claim.[10]

3         2.   MERS

4         In their complaint, the Vawters challenge MERS's role as beneficiary on the Deed

5    of Trust.  (Compl. ¶ 2.16.1.)  The Deed of Trust lists MERS as the beneficiary as

6    nominee for Paul Financial.  Specifically, the Deed of Trust reads:

7         "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a
          separate corporation that is acting solely as a nominee for Lender and
8         Lender's successors and assigns.  MERS is the beneficiary under this
          Security Instrument.

9
10   (Sullivan Decl., Ex. A.)  Additionally, the Deed of Trust provides:

11        Borrower understands and agrees that MERS holds only legal title to the
          interests granted by Borrower in this Security Instrument, but, if necessary
12        to comply with law or custom, MERS (as nominee for Lender and Lender's
          successors and assigns) has the right: to exercise any or all of those
13        interests, including, but not limited to, the right to foreclose and sell the
          Property; and to take any action required of Lender including, but not
          limited to, releasing and canceling this Security Instrument.
14
15   (Id.)  Although the Vawters concede that MERS is listed as the beneficiary on the Deed

16   of Trust, they contend that "[t]his is an absolutely untrue assertion, as Defendant MERS

17   does not ever acquire a beneficial interest in mortgage loans."  (Compl. ¶ 2.16.1.)

18   Instead, the Vawters state that MERS "exists in order to keep a computerized record

19   regarding the ownership of millions of mortgage loans secured by real property in the

20   _____

21   [10]  In the future, Chase may be subject to the provisions of RCW 61.24.031, which
     provides, *inter alia*, that the beneficiary must contact the borrower "to assess the borrower's
22   financial ability to pay the debt secured by the deed of trust and explore options for the borrower
     to avoid foreclosure."  RCW 61.24.031(1)(b).

ORDER- 16

1    United States." (*Id.*)  The consequence, as the Vawters see it, is that Paul Financial, as

2    lender and the original holder of the promissory note, remains the beneficiary under the

3    Deed of Trust and that MERS's assignment of its beneficial interest to Chase had no

4    actual effect because MERS had no interest to assign.

5         In their motion, Chase and MERS argue that MERS was an appropriate

6    beneficiary as listed on the Deed of Trust and that the Vawters' assertions to the contrary

7    simply misstate the law.  They contend that courts in the Ninth Circuit have recognized

8    that MERS, acting as nominee for a lender, can serve as a beneficiary.  Chase and MERS

9    rely principally on the decision of this court in *Moon v. GMAC Mortgage Corp.*, No.

10   C08-969Z, 2008 WL 4741492 (W.D. Wash. Oct. 24, 2008), but also cite a range of

11   decisions by courts sitting outside Washington.  (Mot. at 7-8 n.3 (citing, *inter alia*,

12   *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1188-89 (N.D. Cal.

13   2009); *Silvas v. GMAC Mortgage, LLC*, No. CV-09-265-PHX-GMS, 2009 WL 4573234,

14   at *8 (D. Ariz. Jan. 5, 2010)).)  In *Moon*, in the course of ruling on a request to dissolve

15   an injunction, the court considered MERS's role as beneficiary on a deed of trust and

16   reasoned as follows:

17          The deed of trust act allows a beneficiary, such as MERS, to appoint a
            successor trustee, which MERS did in this case.  Plaintiff argues, however,
18          that MERS cannot be a beneficiary and therefore MERS' appointment of a
            new trustee was invalid.  RCW 61.24.005(2) defines a beneficiary as "the
19          holder of the instrument or document evidencing the obligations secured by
            the deed of trust, excluding persons holding the same as security for a
20          different obligation."  Plaintiff provides a printout from MERS' website
            stating that it is an electronic registry that tracks the ownership of loans.
21          Plaintiff argues that because MERS only registers documents it does not
            actually hold them.  Plaintiff's argument is unconvincing.  Simply because

22

MERS registers documents in a database does not prove that MERS cannot
be the legal holder of an instrument.

*Moon*, 2008 WL 4741492, at *5.  In opposition, the Vawters argue that MERS is not a

true beneficiary despite the language of the Deed of Trust.  To support this position, the

Vawters rely on case law from outside Washington.  (Resp. at 20-21 (citing, *inter alia*,

*Mortgage Elec. Registration Sys., Inc. v. Sw. Homes of Ark., Inc.*, 301 S.W.3d 1 (Ark.

2009); *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*, 704

N.W.2d 784 (Neb. 2005); *Landmark Nat'l Bank v. Kesler*, 192 P.3d 177 (Kan. Ct. App.

2008)).)

Here, the court concludes that Chase and MERS have established that the well-

pleaded factual allegations of the complaint, even accepted as true, do not give rise to a

genuine issue of material fact as to whether MERS properly held a beneficial interest

under the Deed of Trust.  The Vawters' assertion that MERS "does not ever acquire a

beneficial interest in mortgage loans" is a legal conclusion rather than a factual

allegation.  Accordingly, although the court has considered the Vawters' arguments, it

declines to accept them wholesale for purposes of this motion.  *Cf. Ashcroft v. Iqbal*, __

U.S. __, 129 S. Ct. 1937, 1949-50 (2009) ("[T]he tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions.").

Further, the factual allegation pleaded by the Vawters in their complaint, *i.e.*, that MERS

"exists in order to keep a computerized record regarding the ownership of millions of

mortgage loans secured by real property in the United States," is insufficient to give rise

to a genuine issue of material fact following this court's decision in *Moon*.  As explained

ORDER- 18

1 in *Moon*, "[s]imply because MERS registers documents in a database does not prove that

2 MERS cannot be the legal holder of an instrument."  *Moon*, 2008 WL 4741492, at *5.

3 The Vawters' factual allegation is simply another species of the argument rejected in

4 *Moon*.  Despite the fact that *Moon* addressed the issue in the context of a motion to

5 dissolve an injunction as opposed to a motion for judgment on the pleadings, the court is

6 not convinced that the result is different.  Even accepting the Vawters' factual allegation

7 that MERS exists to maintain records regarding the ownership of mortgages, this does not

8 mean that MERS cannot hold a beneficial interest under the Deed of Trust.  The Vawters'

9 legal arguments to the contrary are unpersuasive.  Therefore, accepting the factual

10 allegations in the complaint as true and construing them in the light most favorable to the

11 Vawters, the court finds that Chase and MERS have established on the face of the

12 complaint, and the documents necessarily relied upon in the complaint, that no material

13 issue of fact remains to be resolved and that Chase and MERS are entitled to judgment as

14 a matter of law with respect to the Vawters' DTA claim against to MERS.

15   3.  Appointment of Successor Trustee

16    The Vawters also raise questions regarding whether Chase had the authority to

17 appoint QLS as successor trustee in late April 2009.  There is little doubt that Chase

18 prematurely appointed QLS as successor trustee; indeed, Chase concedes that it

19 appointed QLS as successor trustee before MERS assigned its beneficial interest to

20 Chase.  (Mot. at 9 n.4.[11])  Chase argues, however, that its reappointment of QLS as

21

22    [11]  Counsel for Chase also conceded this error at the hearing.

ORDER- 19

1  successor trustee in January 2010 cures what it describes as a non-prejudicial timing

2  mistake.  (*Id.*)

3         The Vawters point to this error in support of their DTA claim, but have not shown

4  how this error gives rise to a viable cause of action, as discussed above.  *See Pfau*, 2009

5  WL 484448, at *12; *Krienke*, 2007 WL 2713737, at *5.  Notably, the Vawters have not

6  alleged that this error caused them prejudice or harm and have not explained how this

7  error would affect any future nonjudicial foreclosure proceedings.  Therefore, accepting

8  the factual allegations in the complaint as true and construing them in the light most

9  favorable to the Vawters, the court finds that Chase and MERS have established on the

10  face of the complaint that no material issue of fact remains to be resolved and that they

11  are entitled to judgment as a matter of law with respect to the Vawters' DTA claim

12  related to Chase's appointment of QLS as successor trustee.

13         4.  Promissory Note

14         Finally, the Vawters question whether Chase actually held the Note at the time the

15  nonjudicial foreclosure proceedings were initiated.  Chase has submitted a copy of the

16  Note and the Vawters concede that Chase "now has possession of the Note endorsed in

17  blank . . . ." (Supp. Resp. at 2.)  Even accepting as true the Vawters' allegation that Chase

18  previously did not hold the Note, this does not give rise to a cause of action for damages

19  under the DTA where the trustee's sale has been discontinued, as discussed above.  *See*

20  *Pfau*, 2009 WL 484448, at *12; *Krienke*, 2007 WL 2713737, at *5; *cf. Freeston v.*

21  *Bishop, White & Marshall, P.S.*, No. C09-5560BHS, 2010 WL 1186276, at *6 (W.D.

22  Wash. Mar. 24, 2010) (finding that plaintiffs failed to state a plausible claim based on

1   defendant's alleged failure to produce the original promissory note).  Furthermore, the

2   Vawters simply do not contest their default under the terms of the promissory note or

3   otherwise challenge the proposition that the holder of the promissory note is entitled to

4   initiate nonjudicial foreclosure proceedings.  Therefore, accepting the factual allegations

5   in the complaint as true and construing them in the light most favorable to the Vawters,

6   the court finds that Chase and MERS have established on the face of the complaint and

7   the documents necessarily relied upon in the complaint that no material issue of fact

8   remains to be resolved and that Chase and MERS are entitled to judgment as a matter of

9   law with respect to the Vawters' DTA claim related to the promissory note.[12]

10          In sum, the court grants Chase and MERS's motion for judgment on the pleadings

11  with respect to the Vawters' DTA claims.

12  **E.      Intentional Infliction of Emotional Distress**

13          In their complaint, the Vawters allege a claim for intentional infliction of

14  emotional distress, also known as outrage.[13]  (Compl. ¶¶ 3.5-3.6.)  The Vawters do not

15  flesh out the specific contours of this claim, although it is clear that the claim rests

16  generally on "the horrific circumstances" of the refinance, the terms of the Note, and the

17  subsequent nonjudicial foreclosure proceedings.  (*Id.* ¶ 2.18.)  Chase and MERS argue

18  that the Vawters' intentional infliction of emotional distress claim must be dismissed for

19

20          [12] RCW 61.24.030(7), which requires that "the trustee shall have proof that the
    beneficiary is the owner of any promissory note or other obligation secured by the deed of trust,"
21  was not effective with respect to the nonjudicial foreclosure proceedings at issue here.

22          [13]  In Washington, "'[o]utrage' and 'intentional infliction of emotional distress' are
    synonyms for the same tort." *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (Wash. 2003).

1    two reasons: the Vawters have insufficiently pleaded the elements of the cause of action;

2    and the economic loss rule bars recovery on the facts of this case.  (Mot. at 9-10.)

3         1.  Elements

4         "The tort of outrage requires the proof of three elements: (1) extreme and

5    outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3)

6    actual result to plaintiff of severe emotional distress."  *Kloepfel*, 66 P.3d at 632; *see*

7    *Strong v. Terrell*, 195 P.3d 977, 981 (Wash. Ct. App. 2008).  "The question of whether

8    certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for

9    the court to determine if reasonable minds could differ on whether the conduct was

10   sufficiently extreme to result in liability."  *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash.

11   1989); *see Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002).  "The first element

12   requires proof that the conduct was 'so outrageous in character, and so extreme in degree,

13   as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

14   utterly intolerable in a civilized community.'"  *Robel*, 59 P.3d at 619 (quoting *Dicomes*,

15   782 P.2d at 1012).  Here, the Vawters simply have not pleaded factual allegations

16   sufficient to give rise to a genuine issue regarding whether Chase's or MERS's conduct

17   was so extreme as to satisfy the first element of their claim, nor have they pleaded that

18   any conduct actually caused them severe emotional distress.  *Cf. Freeston*, 2010 WL

19   1186276, at *5; *Bell v. Fed. Deposit Ins. Corp.*, No. C09-0150RSL, 2010 WL 113995, at

20   *2 (W.D. Wash. Jan. 7, 2010).  Chase's and MERS's actions in connection with the

21   nonjudicial foreclosure process, as alleged by the Vawters, may be problematic,

22   troubling, or even deplorable, but these actions do not involve physical threats, emotional

1    abuse, or other personal indignities aimed at the Vawters.  Therefore, the court grants

2    judgment on the pleadings with respect to the Vawters' intentional infliction of emotional

3    distress claim against Chase and MERS.

4        2.  Economic Loss Rule

5        As a general principle, the economic loss rule bars recovery for alleged breach of

6    tort duties where a contractual relationship exists and the losses are economic in nature.

7    *Alejandre v. Bull*, 153 P.3d 864, 868 (Wash. 2007).  In determining whether the

8    economic loss rule applies, "[t]he key inquiry is the nature of the loss and the manner in

9    which it occurs, *i.e.*, are the losses economic losses, with economic losses distinguished

10   from personal injury or injury to other property."  *Id*. at 869.  Where the claimed loss is

11   an economic one, and no exception to the economic loss rule applies, the parties will be

12   limited to contractual remedies.  *Id*.  Courts have applied the economic loss rule to bar

13   outrage claims arising in circumstances similar to this case.  *See Pfau*, 2009 WL 484448,

14   at *10; *Davis v. Wells Fargo Home Mortgage*, 139 Wash. App. 1061, No. 34136-1-II,

15   2007 WL 2039077, at *3-7 (Wash. Ct. App. 2007).

16       The court agrees with Chase and MERS that the economic loss rule precludes the

17   Vawters' intentional infliction of emotional distress claim.  Even viewing the complaint

18   in their favor, the Vawters have not pleaded sufficient factual allegations to sidestep the

19   economic loss rule.  The relationship between the Vawters and Chase and MERS is

20   contractual in nature and arises from the Note and Deed of Trust.  As the *Pfau* court

21   emphasized, "[t]he Washington Court of Appeals specifically addressed a claim for

22   emotional distress related to the alleged mishandling of a mortgage and the resulting

ORDER- 23

1  foreclosure," and ultimately "held that the lack of express provisions for these damages

2  did not prevent the application of the economic loss rule."  *Pfau*, 2009 WL 484448, at

3  *10.  The result, as in *Davis* and *Pfau*, is no different here: the economic loss rule bars

4  the Vawters' intentional infliction of emotional distress claim.

5  **F.      Consumer Protection Act**

6          In their sixth cause of action, the Vawters allege that Chase and MERS violated

7  the CPA.  Once again, the Vawters do not explain with specificity the facts underlying

8  their CPA claims against Chase and MERS.  A liberal reading of the complaint, however,

9  suggests that the Vawters' CPA claim is predicated on the same factual allegations

10 pleaded in support of their DTA claim.  Chase and MERS argue that the Vawters' CPA

11 claims fail because they do not identify an unfair or deceptive practice or act, an effect on

12 the public interest, or a resulting injury.  (Mot. at 11-14.)

13         Here, the court grants judgment on the pleadings in favor of MERS and Chase.

14 "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act

15 or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury

16 to a person's business or property, and (5) causation."  *Panag v. Farmers Ins. Co. of*

17 *Wash.*, 204 P.3d 885, 889 (Wash. 2009); *see Hangman Ridge Training Stables, Inc. v.*

18 *Safeco Title Ins. Co.*, 719 P.2d 531, 533, 535 (Wash. 1986).  Chase and MERS cannot be

19 held liable under the CPA for the acts of other Defendants in connection with initiating

20 the loan.  *White v. Homefield Fin., Inc.*, 545 F. Supp. 2d 1159, 1169-70 (W.D. Wash.

21 2008).

22

1    With respect to MERS, the court concludes that MERS has satisfied its burden

2 under Rule 12(c) by showing that the complaint includes no factual allegations, accepted

3 as true, that form the basis of a CPA claim against it.  The court has already rejected the

4 Vawters' challenge to MERS's role as beneficiary under the Deed of Trust; likewise, this

5 cannot give rise to a CPA claim.  A review of the complaint reveals that the Vawters did

6 not plead any other factual allegations concerning MERS, nor do the Vawters point to

7 any other facts in their briefing.  Therefore, the court grants judgment on the pleadings in

8 favor of MERS with respect to the Vawters' CPA claim.

9    Next, with respect to Chase, the court concludes that Chase has met its burden

10 under Rule 12(c) by showing that no material issue of fact remains to be resolved as to

11 the elements of causation and injury.  Even accepting as true the well-pleaded factual

12 allegations in the complaint and assuming Chase engaged in conduct that falls within the

13 scope of the first three elements of a CPA claim, the Vawters have not pleaded factual

14 allegations sufficient to give rise to a genuine issue of fact regarding the fourth and fifth

15 elements.  The Vawters simply plead no actionable injury.  Notably, no trustee's sale

16 actually occurred, and the Vawters neither dispute their default under the terms of the

17 Note nor challenge the proposition that nonjudicial foreclosure is appropriate generally.

18 The court rejects the Vawters' contention that a genuine issue of material fact exists with

19 respect to injury due to their speculative fear that some unknown entity, other than Chase,

20 will attempt to assert its rights under the Note or Deed of Trust.  (Resp. at 29.)  This

21 speculation is insufficient to give rise to a genuine issue of material fact.  Therefore, the

22

1  court grants judgment on the pleadings in favor of Chase with respect to the Vawters'

2  CPA claim.[14]

3  **G.    Quality Loan Service**

4        QLS joins in the motion for judgment on the pleadings.  It asserts that "[f]or the

5  reasons outlined in said motion, dismissal of [QLS] from this action with prejudice is

6  warranted."  (Joinder in Mot. (Dkt. # 14) at 1.)  QLS does not otherwise address the

7  Vawters' claims as they relate to QLS or explain how its role as trustee affects the

8  viability of those claims.  Without more, the court denies QLS's request for judgment on

9  the pleadings.

10                    **IV.    CONCLUSION**

11        For the foregoing reasons, the court GRANTS Chase and MERS's motion for

12  judgment on the pleadings (Dkt. # 11) and DENIES QLS's request for judgment on the

13  pleadings (Dkt. # 14).

14        Dated this 22nd day of April, 2010.

15

16                                        _____

17                                        JAMES L. ROBART
                                          United States District Judge

18

19

20        _____

21        [14] Having made this determination, the court need not address Chase and MERS's
      argument that the DTA provides the exclusive remedies for violations of its provisions and thus

22  shuts out potential pre-trustee's sale CPA claims.  (Reply at 13.)