1

The Honorable James L. Robart

2

3

4

5

6                UNITED STATES DISTRICT COURT
7       FOR THE WESTERN DISTRICT OF WASHINGTON
                      IN SEATTLE

8   HENRY AND ROSE VAWTER,              )
                                        )   Case No. 09-1585 JLR
9                Plaintiffs,            )
                                        )
10        v.                            )   PLAINTIFFS' RESPONSE TO MOTION
                                        )   TO DISMISS BROUGHT BY QUALITY
11  QUALITY LOAN SERVICE                )   LOAN SERVICE CORPORATION OF
    CORPORATION OF WASHINGTON; PAUL     )   WASHINGTON, INC.
12  FINANCIAL, LLC; TWIN CAPITAL        )
    MORTGAGE; MORTGAGE; ELECTRONIC      )
13  REGISTRATION SYSTEMS; JP MORGAN     )
    CHASE BANK and Doe Defendants 1 through )
14  20, inclusive,                      )
                                        )
15                                      )
                                        )
16               Defendants.            )
    _____)

17        Comes now, Plaintiffs Henry and Rose Vawter, to respond to the Motion to Dismiss

18  brought by Defendant Quality Loan Service Corporation of Washington, Inc. ("QLS").

19                              **FACTS**

20        As this Court is aware from having already ruled on previously filed motions, the

21  Vawters' factual allegations are as stated in the Complaint. Defendant QLS has not yet

22  bothered to answer the Complaint, even though the case was filed was originally filed on

23  August 21, 2009. In the event that this Court denies Defendant QLS' Motion, the Vawters will

24  be seeking a default against Defendant QLS as there is no excuse for its failure to answer the

25  complaint more than one year after being served.

26

27

PLTFS' RESPONSE TO MOTION TO DISMISS  - 1
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

The Vawters are an elderly couple living on Social Security benefits and a small retirement pension in the home where they have resided for more than 38 years.  Because the Vawters are on a fixed income, they have had financial difficulties in the last several years related to their inability to maintain mortgage payments and contend with medical expenses and necessary home repairs.  Sometime in late 2006 and early 2007 the Vawters were solicited regarding a new mortgage loan by Defendant Twin Capital.  The Vawters have made many assertions against Defendant Twin Capital related to loan origination, but those claims are not particularly relevant to the claims they are simultaneously pursuing against Defendant QLS.  The Vawters maintain that the mortgage loan they received was completed in violation of federal and state laws, which has contributed to the reasons that they are unable to afford their mortgage payments.  However, for purposes of the Vawters' response to this motion, the reason for the default on their mortgage loan is largely irrelevant.  The protections for homeowners and the trustee duties specified in the Washington Deed of Trust Act ("DTA"), RCW 61.24, *et seq.*, are only relevant when a borrower has defaulted.  To put it simply – the requirements of the DTA contemplate a default and the statute is only utilized once an alleged default has occurred.  Therefore, arguments that the Vawters are not entitled to insist upon compliance with the requirements of the DTA because they are in default are disingenuous and entirely inconsistent with the DTA.  The DTA only matters when there has been an alleged default.

After obtaining the predatory mortgage loan, the Vawters were advised in writing about various changes to their servicing agents, as well as the true amount of their mortgage payments.  It was vastly more than the Vawters believed that they were going to have to pay on the loan.  The Vawters scrambled to make the mortgage payments and did so for many months, before eventually falling into default.

PLTFS' RESPONSE TO MOTION TO DISMISS  - 2
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    When the Vawters obtained their loan, they signed a Promissory Note and a Deed of

2  Trust payable to Defendant Paul Financial.  MERS is listed on the Deed of Trust as "acting

3  solely as a nominee for Lender [Defendant Paul Financial] and Lender's successors and

4  assigns, even though the Lender did not identify any successors or assigns during the loan

5  signing process.  Defendant Paul Financial's "successors or assigns" did not exist when the

6  Vawters executed the Deed of Trust.  Defendant Paul Financial is identified as the "Lender" on

7  the Note and it was payable only to that entity.  The Note was not payable to MERS.  In

8  connection with its Motion for Judgment on the Pleadings, Defendant Chase provided evidence

9  to the Court to indicate that it had physical possession of the Note and that it had been endorsed

10  in blank. (Dkt. 22).  However, it is important to note that the Note had two endorsements – one

11  from Defendant Paul Financial to a company called Residential Holdings, LLC, and then in

12  blank from Residential Holdings, LLC.  There is no indication on the document as to when

13  these endorsements were made and since the Note is endorsed in blank, the actual possession of

14  the Note becomes even more important for determining holder status under the DTA and the

15  UCC.  *Id.*

16    As acknowledged by Chase in its briefing and during oral argument, there were no

17  recorded Assignments in the records of King County, Washington wherein Defendant Paul

18  Financial and/or Defendant MERS assigned its interest in the Deed of Trust to any other entity

19  at the time that the Vawters' Complaint was filed.  In fact, Chase caused such a document to be

20  recorded in the records of King County **after** the Vawters filed their case.  *See,* Declaration of

21  Matthew Sullivan (Dkt. 12).  In spite of the fact that there was no record that Chase was the

22  holder of the Vawters' Promissory Note, as required by the DTA in order to initiate a

23  foreclosure action, Christina Allen, the alleged "Attorney in Fact" for Chase executed an

PLTFS' RESPONSE TO MOTION TO DISMISS  - 3
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    "Appointment of Successor Trustee" document in Dakota County, Minnesota on or about April

2    24, 2009, purporting to appoint Defendant QLS as the Successor Trustee.  RCW 61.24.005

3    ("Beneficiary" is defined as: holder of the instrument or document evidencing the obligations

4    secured by the deed of trust, excluding persons holding the same as security for a different

5    obligation.")  *Id.*   The notarization certification contradicts Ms. Allen's assertion that she is an

6    "Attorney in Fact" for Chase by reading that she is "of JP Morgan Chase Bank, National

7    Association", as though she is its employee or officer.  This document was recorded in the

8

9    records of King County, Washington on April 28, 2009.

10          In spite of the fact that Defendant QLS had not been properly appointed as the

11   Successor Trustee, it nevertheless caused a Notice of Trustee's Sale to be recorded in the

12   records of King County, Washington on May 28, 2009, and caused it to be posted at the

13   Vawters' residence and mailed to their residence.  The Notice indicates that the sale is

14   authorized because MERS assigned the beneficial interest, as "nominee for Paul Financial,

15   LLC" to Chase.  But this statement is entirely incorrect, as no Assignment had been recorded in

16

17   King County as of May 28, 2009.  In fact, the corrective documents recorded in King County

18   by Chase include an Assignment from MERS to Chase which was recorded on October 9,

19   2009. Sullivan Dec. (Dkt. 12).   The Assignment contains unattributed and undated handwritten

20   additions on the first page of the document which significantly alter its contents.  On the first

21   page the identity of the "undersigned corporation" is inserted by way of an asterisk and the

22

23   handwritten notation "Mortgage Electronic Registration Systems, Inc. as Nominee for Paul

24   Financial, LLC".  Even though there is clearly plenty of room on the first page for a signature

25   block and notarization, the signature is affixed on the second page with a signature dated

26   "4/21/2009 8:02 A.M." but a notarization that allegedly took place on May 19, 2009 in Duval

27

PLTFS' RESPONSE TO MOTION TO DISMISS  - 4
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

County, Florida.  The signature block bears the signature of one Roderick Seda, an alleged Vice

President of "Mortgage Electronic Registration Systems, Inc., as Nominee for Paul Financial,

LLC".  The Vawters maintain that Mr. Seda is not actually an employee of MERS and is either

employed by Chase or some other third party service provider whose job it is to sign documents

on behalf of numerous corporate entities in order to facilitate foreclosure sales such as the

Vawters'.  Certainly, there are no documents which this Court can consider that support the

assertion that Mr. Seda is an officer of MERS (whose offices are located in Virginia – not

Florida) and/or that he had legal authority as an officer of any company to execute documents

as a "nominee" of Defendant Paul Financial.  Further, the Vawters maintain that Defendant

QLS certainly knew that Mr. Seda was not acting on behalf of Defendant Paul Financial.

Further evidence regarding the misrepresentations made about legal authority to act in

this case is included in the Appointment of Successor Trustee document.  This document was

signed on or about April 24, 2009, by Christina Allen, "Attorney in Fact" for Chase in Dakota

County, Minnesota.  Counsel for the Vawters is engaged in other litigation involving similar

issues in which Ms. Allen signed documents wherein she represented herself to be an officer of

IndyMac Federal Bank, fsb.  *See,* Declaration of Greg Allen filed in support of the Motion for

Summary Judgment filed by Defendant Lender's Processing Service, in *Bain v. Metropolitan

Mortgage Group,* Case No. CV-09-00149-JCC (U.S.D.C. Western Dist. WA), a true and

correct copy of which is attached to the Declaration of Melissa A. Huelsman filed concurrently

herewith.  Ms. Allen confirms in this Declaration that Ms. Allen is an employee of LPS whose

job includes signing documents as the supposed officer of numerous companies.  (Dkt. 16,

Huelsman Dec. filed in support of the Response to Motion for Judgment on the Pleadings).

These statements demonstrate the untruthfulness of Ms. Allen's written assertions.  Again,

PLTFS' RESPONSE TO MOTION TO DISMISS - 5
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1  Defendant QLS certainly knew that Ms. Allen was not an officer of Chase and it never even

2  tried to ascertain the identity of the holder of the Vawters' Note.

3      In connection with its Motion for Judgment on the Pleadings, Chase and MERS asked

4  this Court to take notice of the newly executed and recorded Appointment of Successor Trustee

5  document signed by Jeanni D. Lowry (title not identified) on January 13, 2010 on behalf of JP

6  Morgan Chase Bank, National Association.  A Chase conceded at oral argument, this document

7  was executed for the sole purpose of "correcting" the improper foreclosure which Chase had

8  already initiated.  Defendant QLS was the trustee that acted upon the improper instructions

9  from Chase.  In spite of the fact that Defendant QLS has not been properly appointed as the

10 Successor Trustee because that documentation was not signed by the holder of the Note, it

11 nevertheless caused a Notice of Trustee's Sale to be recorded in the records of King County,

12 Washington on May 28, 2009, and caused it to be posted at the Vawters' residence and mailed

13 to their residence.  The Notice indicates that the sale is authorized because Defendant MERS

14 assigned the beneficial interest, as "nominee for Defendant Paul Financial, LLC" to Defendant

15

16

17 JP Morgan.  There is no mention at all about the Note.

**ARGUMENT**

18

19 A.    Standard for Granting a Motion to Dismiss.

20      Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of

21 the claim showing that the pleader is entitled to relief."  The complaint must give defendant

22 "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v.

23 Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal

24 quotation and modification omitted).  To meet this requirement, the complaint must be

25 supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1950, 177

26

27

PLTFS' RESPONSE TO MOTION TO DISMISS - 6
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The Court first identifies the non-conclusory factual allegations, and the Court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In its brief, Defendant QLS also asserts that "law of the case" requires a dismissal of the claims against it under FRCP 12(b)(6). Under the FRCP 12(b)(6) standard, just as under FRCP 8, the Court must "(1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief." Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2006) 9:187, citing to Cahill v. Liberty Mut. Ins. Co., (9th Cir. 1996) 80 F.3d 336, 337-338;

PLTFS' RESPONSE TO MOTION TO DISMISS - 7
Case no. 09-1585 JLR

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1  Vector Research, Inc. v. Howard & Howard Attorneys, P.C. (6th Cir. 1996) 76 F.3d 692, 697.

2  A Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. U.S. v. Redwood City, (9th

3  Cir. 1981) 640 F.2d 963, 966.  No such "extraordinary" circumstances exist in this case.  The

4  Court's ruling as to Chase and MERS does not preclude the claims against Defendant QLS.  In

5  fact, QLS intentionally ignores the admission by Chase and this Court's finding that the first

6  attempted foreclosure was done "in error."

7

8  B.   The Washington Legislature Defined "Beneficiary" as the Holder of the Note.

9       The Vawters have reviewed the Court's Order dismissing Chase and MERS but notes

10  that this Court did not discuss the import of the Legislature's definition of "beneficiary" in the

11  DTA.  A "beneficiary" is defined specifically as **"holder of the instrument or document**

12  **evidencing the obligations secured by the deed of trust**, excluding persons holding the same

13  as security for a different obligation."  RCW 61.24.005 (emphasis added).  This definition has

14  remained unchanged since the statute was enacted and it is consistent with Article 3 of the

15  UCC, as adopted by Washington, wherein the only person entitled to enforce the terms of a

16  Promissory Note is the holder or a non-holder or transferee who obtains the right to enforce

17  directly from the holder.  RCW 62A.3-203.  Frankly, it is irrelevant for purposes of utilization

18  of the DTA how the Deed of Trust instrument in question defines "beneficiary".  The rights,

19  duties and obligations contained in the DTA are governed by the definitions contained in that

20  statute and this mean that only an entity or person who meets the definition of "beneficiary"

21  may perform the acts required of a "beneficiary" in the Deed of Trust Act.

22

23       The import of this definition of "beneficiary" is seen in the next section of the DTA.

24  RCW 61.24.010 specifies who may act as a trustee and the process by which a trustee is

25  substituted.  RCW 61.24.010(2) requires:

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

(2) The trustee may resign at its own election or be replaced by the beneficiary. The trustee shall give prompt written notice of its resignation to the beneficiary. The resignation of the trustee shall become effective upon the recording of the notice of resignation in each county in which the deed of trust is recorded. If a trustee is not appointed in the deed of trust, or upon the resignation, incapacity, disability, absence, or death of the trustee, or the election of the **beneficiary** to replace the trustee, the **beneficiary** shall appoint a trustee or a successor trustee. Only upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.

RCW 61.24.010(2) (emphasis added). Thus, only the "beneficiary" as defined in the DTA may appoint the new trustee. Since there is no evidence at this time regarding when the Note was endorsed to Chase and/or Chase became the holder of the Note by obtaining physical possession of the endorsed Note, there is nothing upon which Defendant QLS can rely to support an assertion that it was appointed by the proper party to be the new trustee. In fact, Defendant QLS asserts that MERS appointed it and that such action was proper. Motion, 5:2-6:22 (Dkt. 49). While Defendant QLS cites to a few federal court cases holding that MERS may act on behalf of others to conduct a foreclosure, not a single one of those decisions considers or even discusses the specific language of the Washington Deed of Trust Act and its definition of "beneficiary". While some of the federal cases have discussed MERS' power to "act on behalf of whoever was the equitable owner of the rights in the Deed of Trust", such holding has no import in Washington state because its Legislature has specifically defined "beneficiary" and MERS does not meet that definition. Silvas v. GMAC Mortgage, LLC, 2009 WL 4573234, *8 (D. Ariz. 2009). Further, there are no Washington state cases which discuss this issue, and this is a state law question and not one which should be definitively decided by the federal courts.

Defendant QLS cites to Udall v. T.D. Escrow Services, Inc., 159 Wn.2d 903, 913 (2007) in support of its position, contending that the decision supports the notion that "agency

PLTFS' RESPONSE TO MOTION TO DISMISS - 9
Case no. 09-1585 JLR

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

principles" apply under the Deed of Trust Act.  Motion, 5:19-20 (Dkt. 49).  First, as noted in

Udall, "A court's objective in construing a statute is to determine the legislature's intent."  Id.

at 903.  Here, the Legislature's intent for the definition of "beneficiary" is made very clear – it

specifically defines the word for use in the statute.  RCW 61.24.005.  The facts of Udall are

relatively simple and do not correlate to the facts in this case as it was a dispute between a

trustee whose agent initiated the sale with an incorrect bid amount and the bidder.  The Court

considered the language specifically of RCW 61.24.040 which states that the property may be

sold by the "trustee or its authorized agent".  RCW 61.24.040.  This portion of the DTA

therefore allows for some portion of the trustee's responsibilities – the calling of the sale – to

be completed by an "authorized agent".  This language does not alter the provisions of RCW

61.24.005 which define "beneficiary" nor does it change any of the qualifications of who may

be a trustee, and there is nothing in the Udall holding which supports such assertion.  RCW

61.24.010.  The Udall Court also reminds us that "[t]he Act must be construed in favor of

borrowers because of the relative ease with which lenders can forfeit borrowers' interests and

the lack of judicial oversight in conducting nonjudicial foreclosure sales.  Queen City Sav. &

Loan Ass'n v. Mannhalt, 111 Wn.2d 503, 514, 760 P.2d 350 (1988) (Dore, J., dissenting);

Koegel v. Prudential Mut. Sav. Bank, 51 Wn.App. 108, 111, 752 P.2d 385, review denied, 111

Wn.2d 1004 (1988)."  Udall at 916.

Further, the language of RCW 61.24.040 does not change the "duty" that a trustee has

to the borrower, beneficiary and grantor as described by the plain language of the statute.  RCW

61.24.010(4).  This portion of the DTA was changed effective July 2009 to a "duty of good

faith" to those parties.  When Defendant QLS initiated the Vawters' foreclosure in May 2009,

the trustee was supposed to adhere to a standard of "impartiality".  Id.  This language was added

PLTFS' RESPONSE TO MOTION TO DISMISS  - 10
Case no. 09-1585 JLR

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

to the statute in 2008 and was only in place for one year.  Prior to the insertion of the trustee's

duty language in the DTA, trustee had been required to adhere to a "fiduciary duty" as to all

parties that was described in Cox v. Helenius, 103 Wn.2d 386 (1984).

C.   The Vawters have the right to pursue their claims for violations of the Consumer
Protection Act based upon a violation of the trustee's duties under the DTA.

The claims against Defendant QLS for violations of the Consumer Protection Act

(RCW 19.86, et seq.) stem from its violation of its duties under the Deed of Trust Act.  The

Vawters recognize that this Court has entered an Order as regards the CPA claim against

MERS and Chase, but they nevertheless maintain that they can prove a claim for a violation of

the CPA.

The CPA declares unlawful "unfair or deceptive acts in the conduct of any trade or

commerce."  RCW 19.86.020.  The CPA defines "trade or commerce" broadly, to include "sale

of assets or services, and any commerce directly or indirectly affecting the people of the state

of Washington."  RCW 19.86.010(2).  The CPA expressly confirms its provisions "shall be

liberally construed" to fulfill its objective of protecting the public against "unfair, deceptive,

and fraudulent acts or practices."  RCW 19.86.920.  The CPA is subject to enforcement by the

Attorney General, by other state governmental entities, and by private individuals.  RCW

19.86.080, 090.  As noted by the Washington Supreme Court in Panag v. Farmers Ins. Co. of

Wash., 166 Wn.2d 27, 204 P.3d 885 (Wash. 2009), "The purpose of the CPA is to

"complement the body of federal law governing restraints of trade, unfair competition and

unfair, deceptive, and fraudulent acts and practices in order to protect the public and foster fair

and honest competition." RCW 19.86.920; Haberman v. Wash. Pub. Power Supply Sys., 109

Wn.2d 107, 169, 744 P.2d 1032, 750 P.2d 254 (1987).

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

To establish a private CPA claim, the plaintiff must generally establish the following five elements: (i) that the defendant committed an unfair or deceptive act or practice; (ii) that the act or practice occurred in the scope of trade or commerce; (iii) that the act or practice affects the public interest; (iv) that the plaintiff suffered injury; and (v) that the injury was caused by the act or practice. See Cashmere Valley Bank v. Brender, 116 P.3d 421 (2005); see also Jeckle v. Crotty, 120 Wn. App. 374; 85 P.3d 931 (2004); see also Micro Enhancement Intern, Inc. v. Coopers & Lynbrand, LLP, 110 Wn. App. 412, 40 P.3d 1206 (2002).  Whether a given practice is "unfair or deceptive" is a normally a question for the finder of fact.  Burbo v. Harley C. Douglass, Inc., 125 Wn. App. 684, 106 P.3d 258 (2005); see also Guijosa v. Wal-Mart Stores, Inc., 144 Wash.2d 907, 32 P.3d 250 (2001).

The next element in a CPA claim is showing that the act occurred in the course of trade or commerce.  This element generally requires some sort of commercial relationship between the defendant and the homeowner.  See Merchant v. Peterson, 38 Wn. App. 855, 860, 690 P.2d 1192 (1984); see also Holiday Resort Community Association v. Echo Lake Associates, LLC, 135 P.3d 499, 504 (2006).  However, there does not need to be privity of contract or a specific contractual relationship between the parties.  Holiday Resort at 504.  In a foreclosure setting, there is no reason to believe that the Legislature did not intend for the sale of a person's home at auction by the trustee to be considered as falling within the definition of "trade and commerce."  RCW 19.86.010(2).  Further, "trade" and "commerce" are defined terms under the CPA to "include the sale of assets or services, *and any commerce directly or indirectly affecting the people of the state of Washington*." RCW 19.86.010(2) (emphasis added).

The next element in a private CPA claim is showing that the unfair or deceptive act "impacts the public interest."  Whether the practice impacts the public interest is also a question

PLTFS' RESPONSE TO MOTION TO DISMISS  - 12
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   of fact, but is generally determined according to such factors as (i) whether the acts were

2   committed in the course of the defendant's business; (ii) whether the defendant advertised to

3   the general public; (iii) whether the defendant actively solicited the plaintiff or others; and (iv)

4   whether the defendant occupied a superior bargaining position to the plaintiff. Cotton v.

5   Kronenberg, 111 Wn. App. 258, 274, 44 P.3d 878 (2002).  These, and potentially other relevant

6   factors, are to be viewed in light of the context and circumstances in which the alleged unfair or

7   deceptive practices took place.  See Cotton at 274.  Here, Defendant QLS undertook the

8   complained of acts "in the course" of its business – acting as a foreclosing trustee.  In addition,

9   A plaintiff need not show the act in question was intended to deceive, only that it had the

10  capacity to deceive a substantial portion of the public.  Leingang v. Pierce County Med.

11  Bureau, Inc., 131 Wn.2d 133, , 150, 930 P.2d 288 (1997).

12

13      Finally, the Plaintiffs must prove that they have been injured by the acts of the

14  defendants against whom the CPA claim is plead.  Here, the Vawters maintain that a

15  foreclosure was wrongfully initiated against their home, and they were forced to incur attorneys

16  fees and costs in order to prevent the wrongful foreclosure.  This Court has already entered a

17  finding that Defendant QLS was "prematurely appointed" as the trustee.  Order, 19:17-20 (Dkt.

18  30).  Given the cavalier attitude towards its actions displayed by Defendant QLS, it is

19  appropriate for this Court to consider that the Vawters may be able to prove that QLS has

20  similarly been "prematurely" appointed as a trustee and taken actions to initiate a foreclosure

21  against other real property when it had not been appointed as the trustee.  This would not be the

22  first time this year that a Court found that Defendant QLS had not complied with its duties as a

23  foreclosing trustee.  See, Declaration of Melissa A. Huelsman filed concurrently herewith

24  ("Huelsman Dec.") and Plaintiffs' Request to Take Judicial Notice, also filed concurrently

25

26

27

PLTFS' RESPONSE TO MOTION TO DISMISS  - 13
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    herewith.  In addition, the damages incurred by individuals bringing claims under the CPA do

2    not need to be significant in order to be considered an "injury" under the statute.  The injury

3    requirement is met upon proof that a party's "property interest or money is diminished because

4    of the unlawful conduct even if the expenses caused by the statutory violation are

5    minimal." Mason v. Mortgage Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990); see also,

6    

7    Tallmadge v. Aurora Chrysler Plymouth, Inc., 25 Wn.App. 90, 605 P.2d 1275 (1979).

8        One of the most powerful provisions in the CPA is the ability to seek injunctive relief so

9    that other Washington citizens are not similarly harmed.  Here, the Vawters have asked for

10   injunctive relief in their prayer and it is entirely appropriate in a "private attorneys general

11   action" such as the CPA that individual plaintiffs seek to make certain that business entities

12   operating in the State of Washington act in conformity with its laws.  Here, it is vitally

13   important that entities engaged in the business of acting as foreclosing trustees comply strictly

14   with the requirements of the law.  As noted by the Court in Panag, "[t]he CPA itself, the

15   

16   purposes for which it was enacted, and our cases do not support the argument that a CPA claim

17   must be predicated on an underlying consumer or business transaction. The CPA allows

18   "[a]ny person who is injured in his or her business or property by a violation" of the act to bring

19   

20   a CPA claim. RCW 19.86.090 (emphasis added). Id. at 31.

21       It is important to note that Defendant QLS did not cite to a single case which supported

22   its assertion that it cannot be liable for a CPA claim based upon its failure to adhere to the

23   requirements of the DTA and the fact that is initiated a foreclosure sale when it had been

24   appointed as the trustee by the "beneficiary" as defined in the DTA.  Moreover, as admitted by

25   Chase, it purported to appoint Defendant QLS as the trustee before it had even been "assigned"

26   as the beneficiary in the Deed of Trust upon which it and Defendant QLS rely.  The Vawters

27   

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   maintain that the named beneficiary on the Deed of Trust is irrelevant as to who has the power

2   to act under the DTA, but they simply point out the inconsistency in its own position.  The CPA

3   was expressly created by the Washington Legislature to allow the Attorney General and private

4   citizens to bring claims with the goal of preventing businesses from engaging in "unfair and

5   deceptive" practices.  The Vawters' lawsuit is an effort at preventing Defendant QLS from

6   continuing to initiate foreclosure proceedings when it has not been appointed as the trustee by

7   the "beneficiary" as defined under the DTA.  Further, there is still no evidence which can be

8

9   considered by this Court as to when Chase acquired possession of the Vawters' Promissory

10  Note and thus, there is no evidence as to the identity of the "beneficiary" at the time that the

11  foreclosure was initiated by Defendant QLS.

12  D.   The Vawters' claims against Defendant QLS related to the foreclosure as for a breach of

13  its duty under the Deed of Trust Act.

14

15      The Vawters have not brought a claim under the common law for wrongful foreclosure

16  – contrary to the assertions of the other defendants herein.  Their claims arise from a breach of

17  Defendant QLS' duties under the DTA.  The Vawters are mindful of the Court's Order as

18  regards Chase and MERS, but nevertheless seeks to remind this Court that there are no

19  published Washington state court decisions which preclude the bringing of claims against a

20  trustee under the Deed of Trust Act simply because the sale was prevented by the borrower's

21  affirmative actions.  It is also important to note that the DTA and the interpreting case law

22  favors borrowers acting before a foreclosure has taken place, but because of recent changes to

23

24  the statute, homeowners may still pursue claims after a foreclosure has taken place.  RCW

25  61.24.127 (effective July 2009).   It is illogical to conclude that the Legislature acted to

26  preserve rights for homeowners who failed to utilize the pre-foreclosure sale remedies but did

27

PLTFS' RESPONSE TO MOTION TO DISMISS  - 15
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

not intend for those persons who used the remedies available to have an ability to seek recovery

from the wrongdoers.  Further, the Legislative history of RCW 61.24.127 makes clear that it

was passed in direct response to a Washington Court of Appeals decision which seemed to

preclude any claims when the borrower did not seek injunctive relief.  <u>Brown v. Household</u>,

2008 Wash. App. LEXIS 1857 (Wash. Ct. App. July 28, 2008).  Thus, the Legislature was not

providing "new" rights for homeowners when it enacted RCW 61.24.127, but rather it was in

essence telling the appellate courts that they were wrong in their interpretation of the statute's

provisions and was restoring that which had always been there in the statute.  While the newly

enacted provisions do not apply to the Vawters' foreclosure sale, it is important to consider

what the Legislature has been doing to the DTA when trying to decipher its intentions as

regards provisions which have remained intact, such as those sections cited above.  The

Legislature did not feel the need to explicitly state that homeowners were entitled to enforce the

provisions of the DTA because no court has ever held that they could not do so and in fact,

there is case law which allows a wronged homeowner to obtain relief for such violations.  <u>Cox</u>

<u>v. Helenius</u>, 103 Wn.2d 383, 693 P.2d 683 (1985).

A review of the rather limited body of published Washington state case law interpreting

the DTA makes it clear that all of them except one involve post-foreclosure actions and much

of the focus in the decisions was on whether or not the claims were waived because the sale

was not enjoined.  Simply put, it makes no sense at all to interpret the statute in such a fashion

as to require homeowners to bear the financial burden of seeking to enjoin the foreclosure

which was wrongfully initiated without recourse to the wrongfully foreclosing entity to recover

those costs.  In fact, the DTA makes clear that the "prevailing party" in an action to restrain or

PLTFS' RESPONSE TO MOTION TO DISMISS  - 16
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    enjoin a foreclosure sale is entitled to its attorneys fees in several places.  RCW

2    61.24.130(1)(b).

3
         [T]he court may condition granting the restraining order or injunction upon the giving
4        of security by the applicant, in such form and amount as the court deems proper, for the
         payment of such costs and damages, including attorneys' fees, as may be later found by
5        the court to have been incurred or suffered **by any party** by reason of the restraining
         order or injunction.
6
7    RCW 61.24.130(1)(b) (emphasis added).

8    RCW 61.24.090

9        (2) Any person entitled to cause a discontinuance of the sale proceedings shall have the
         right, before or after reinstatement, to request any court, excluding a small claims court,
10       for disputes within the jurisdictional limits of that court, to determine the
         reasonableness of any fees demanded or paid as a condition to reinstatement. **The court**
11       **shall make such determination as it deems appropriate, which may include an**
         **award to the prevailing party of its costs and reasonable attorneys' fees, and**
12       **render judgment accordingly.** An action to determine fees shall not forestall any sale
         or affect its validity.
13
14   RCW 61.24.090(2) (emphasis added).

15       Further, because Defendant QLS was demanding that the Vawters pay the attorneys

16   fees and costs related to the foreclosure proceeding, under Washington law, they are entitled to

17   seek recovery of their attorneys fees and costs if they are deemed to be the prevailing party.

18   RCW 4.84.330.  As it stands now, the Vawters have prevailed against Defendant QLS by
19
     obtaining a temporary restraining order, and there is no reason to believe that they cannot
20
21   prevail on their claims against Defendant QLS for its failure to comply with the requirements

22   of the Deed of Trust Act in the future, and if they do, they are entitled to attorneys fees and

23   costs in bringing that action.

24       As noted above, Defendant QLS cannot cite to any published Washington state cases in
25
     support of its position.  The only case decided by a Washington Court to which it cites s
26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    Krienke v. Chase Home Fin., LLC, 140 Wn.App. 1032 (2007). The Court of Appeals in

2    Krienke made a conscious decision not to publish the decision.  Clearly it did not intend for it

3    to be a binding precedent and if this matter were being litigated in Washington Courts, which is

4    where issues relating to interpretation of state statutes should properly be decided, Defendant

5    QLS could not rely upon the unpublished decision.  RCW 2.06.040.  *See also,* Johnson v.

6    Allstate Ins. Co., 126 Wn.App. 510, 108 P.3d 1273 (2005).  While the Vawters are aware that

7    this matter is currently in the federal courts and that it is permissible to cite to unpublished

8

9    opinions, it is important to note the importance that the Washington appellate courts attached to

10   the Krienke decision.  It is clear that they did not view it as having any relevance to its body of

11   published case law and since it is the only decision rendered on the issue of whether or not

12   there is a common law claim for wrongful foreclosure in Washington state, the opinion should

13   certainly not be extrapolated to result in an interpretation that the Krienke decision precludes

14   the bringing of any claims against a trustee for breach of the duties imposed by the Deed of

15

16   Trust Act.

17        When the Court of Appeals affirmed in Amresco Independence Funding, Inc. v. SPS

18   Properties, LLC, 129 Wash.App. 532, 536-537 (2005) that a plaintiff must show prejudice from

19   the complained of error in a foreclosure, it did not hand trustees an open invitation to violate all

20   of the provisions of the Deed of Trust Act without risk of liability.  (It should also be noted that

21

22   in the Amresco decision, the Court noted that, "Because [the DTA] removes many protections

23   borrowers have under a mortgage, . . . courts must strictly construe [the DTA] in the borrower's

24   favor."  Id. at 886.)  In the few Washington state cases cited by Defendant QLS, Plein v.

25   Lackey, 149 Wn.2d 214, 227-228, 67 P.3d 1061 (2003) and Steward v. Good, 51 Wash.App.

26   509, 515, 754 P.2d 150 (1988), the Courts were focused on the facts and the knowledge of the

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

plaintiffs in those case and decided that they were not entitled to requested relief. The facts in those cases did not involve intentional misrepresentations on documents recorded in the records of King County by the foreclosing trustee. If this Court allows these claims to be dismissed, its message to Defendant QLS and all other foreclosing trustees who do not comply with Washington state law will be that they are free to ignore the requirements of the DTA. Such a statement would be a complete perversion of the DTA and its requirements and an invitation for foreclosing trustees to do exactly as they please without regard for the law during the worst foreclosure crisis in this country since the Great Depression. Clearly, that is not what the Washington Legislature intended when it passed the DTA and took the ability to foreclose on a citizen's home out of the protective purview of the Courts.

In its Order, this Court also noted on several occasions that there were no other court decisions which supported the Vawters' interpretation of their right to bring a claim for violations of the Deed of Trust Act. Those statements are incorrect, as there is a decision out of the Ninth Circuit BAP which strongly supports the Vawters' position, Keahey v. Jared, et al., BAP Case No. WW-08-1151-PaJuKa (9th Cir. November 3, 2008). The Memorandum Opinion is not published, but may be cited for "whatever persuasive value it may have" (see Fed. R. App. P. 32.1). (It should be noted that the Ninth Circuit heard oral argument on this case on August 7, 2010 and the parties are awaiting a ruling.) In Keahey, the Bankruptcy Appellate Panel, in examining the argument on appeal that the award of attorneys fees to counsel for the plaintiff was not allowed, paid careful attention to the DTA requirements that the foreclosing trustee comply strictly with its provisions. The BAP noted that one of the damages which would result from such failure or refusal to strictly comply was liability for the attorneys fees incurred in defending the foreclosure action. The BAP also noted, following Washington case

PLTFS' RESPONSE TO MOTION TO DISMISS - 19
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   law, that the DTA must be construed in favor of the borrower. <u>Keahey</u>, at 22-23. While the

2   Vawters recognize that the BAP is also a federal court which is interpreting Washington state

3   law, they insist that if this Court is going to consider the opinions of other trial court judges in

4   reaching its decision in this case, then it should also consider the opinion of the Bankruptcy

5   Appellate Panel as well. The <u>Keahey</u> decision, although extreme in the facts which resulted in

6   the finding, demonstrates exactly why strict adherence to the requirements of the DTA is

7   necessary, and why the burden of preventing potentially never-ending, wrongfully initiated

8   foreclosures should not be borne by the innocent homeowner. The burden should lie with the

9   actual "beneficiary" and the properly appointed trustee to make certain that they have complied

10  with the requirements of the DTA. While the Vawters do owe mortgage payments to someone,

11  and people have to pay their mortgages if they want to stay in their homes, it is not

12  unreasonable to expect an entity such as Defendant QLS, whose business is foreclosing, to

13  comply with the exact letter of the law before taking the home of an elderly couple.

E.   The Vawters' Emotional Distress Claims and the Economic Loss Rule.

17        The Vawters are cognizant of this Court's finding regarding the inadequacy of the

18  Complaint as regards their emotional distress claims. Therefore, the Vawters will not re-argue

19  the Court's finding but rather request that the Court permit them to amend their Complaint to

20  specifically allege the damage they have suffered as a result of the actions of Defendant QLS

21  herein. Further, the Vawters are aware of this Court's ruling on the economic loss rule, but

22  they again point out that there are no Washington state court opinions which support its

23  findings. Since the claims in this case against Defendant QLS are based entirely upon

24  Washington law, and there is no corollary federal law, they maintain that it is inappropriate for

25  this Court to deny them the right to pursue their claims under Washington law.

PLTFS' RESPONSE TO MOTION TO DISMISS - 20
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1.      The Economic Loss Rule does not apply here.

The Washington Supreme Court's decision in Alejandro v. Bull, 159 Wn.2d 674, 153 P.3d 864 (2007) regarding the proper application of the economic loss rule does not preclude the Vawters' claims in this case.  The Court in Alejandro and in cases resulting in a finding similar to that in Alejandro involved contracts that were actually negotiated between the parties.  Alejandro involved a real estate purchase and sale agreement with terms that were negotiated between the parties with the assistance of their real estate sale agents.  The parties used a form contract and then modified and specifically determined which portions of the form to use and which not to use and/or how to use them.  The parties in Alejandro were litigating over problems with a septic system, which the Court identified as having been a very specific contract term that was discussed and negotiated between the parties to the contract.  Alejandro, supra.  The Vawters' claims and situation in this case are in no way analogous, especially since the Vawters maintain that Defendant QLS is not even properly identified as a "party" to the "contract" since it was not properly appointed as the trustee under the Deed of Trust and it was not a party to the Promissory Note .  The Vawters are aware of this Court's intent to rely upon another unpublished Washington Court appellate decision, Davis v. Wells Fargo, 139 Wn. App. 1061 (2007), but they maintain that this inappropriate.  Again, if the Court of Appeals had intended that parties rely upon the holding, it would have published the decision.  Moreover, what is noticeably lacking in the analysis in Davis is whether the contract in question contained any remedies for the borrower.  The simple answer is that it did not do so.  Thus, a deed of trust is not simply a contract which represents the unequal bargaining position of the parties, but it is also a contract that only provides remedies for one of the parties to the contract.  For those reasons, the reasoning in Davis is very seriously flawed.  How can the parties be "held to

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1  contract remedies" when there are only remedies for one of the parties? <u>Alejandro</u>, at 683.  The

2  <u>Alejandro</u> Court indicated that "**exact** parity in bargaining power is not required", but nowhere

3  did it discuss what to do when there was no parity at all and when there are no remedies

4  outlined in the contract for one or more of the parties.  <u>Id</u>. at 689, n. 5.  <u>Alejandro</u> also did not

5  discuss how to measure those contract damages resulting from "breach of duties assumed only

6  by agreement" when the "agreement" in question does not outline the duties of one of the

7  parties.  <u>Id</u>. at 681-682.  The seminal Washington case on the subject offers no guidance on

8  these sorts of transactions where homeowners are presented with the form and told to take it or

9  leave it, and they do not have any actual understanding that that document does not afford them

10  any rights or protections at all.  Further, if this Court is going to consider federal court opinions

11  regarding the economic loss rule in a mortgage contract situation, it should then consider,

12  <u>Morris v. Novastar Mortgage, Inc.</u>, 2007 U.S. District LEXIS 9039.

13  **CONCLUSION**

14      For all of the foregoing reasons, the Vawters maintain that this Court cannot grant

15  Defendant QLS' Motion to Dismiss.  The Vawters maintain that if this Court does so, it would

16  constitute a manifest injustice and would allow these Defendants to escape from their

17  obligation to adhere to the requirements of the Deed of Trust Act when conducting a

18  foreclosure sale.  Further, it would allow this Defendant to improperly and illegal seek to

19  foreclose on other persons and real property in Washington state when they do not have the

20  legal right to do so.

21  //

22  //

23  //

PLTFS' RESPONSE TO MOTION TO DISMISS  - 22
Case no. 09-1585 JLR

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    Dated this 27th day of September 2010.

2

3                              LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

4

5                              /s/ Melissa A. Huelsman
                               Melissa A. Huelsman, WSBA No.30935
6                              705 Second Avenue, Suite 1050
                               Seattle, Washington 98104
7                              (206) 447-0103
                               (206) 447-0115 Fax
8                              Attorney for Plaintiffs Henry and Rose Vawter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

PLTFS' RESPONSE TO MOTION TO DISMISS  - 23
Case no. 09-1585 JLR