UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Vawter,<br><br>            Plaintiffs,<br><br>    v.<br><br>QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, et al.,<br><br>            Defendants. | CASE NO. 09-1585<br><br>ORDER GRANTING QUALITY LOAN SERVICE CORPORATION OF WASHINGTON'S MOTION TO DISMISS |

### I.    INTRODUCTION

This matter comes before the court on Defendant Quality Loan Services Corporation of Washington's ("QLS") motion to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. # 49). Having considered the motion, all

ORDER- 1

papers filed in support and opposition to the motion, and the pleadings on file, the court GRANTS QLS's motion to dismiss (Dkt. # 49).[1]

## II.   BACKGROUND[2]

This case involves alleged violations of the statutory requirements for the nonjudicial foreclosure of a deed of trust in Washington. The facts alleged in the Vawters' complaint are set forth in detail in the court's prior order granting judgment on the pleadings to Defendants JP Morgan Chase Bank, N.A. ("Chase") and Mortgage Electronic Registration Systems ("MERS") (*see* Order (Dkt. # 30)), and will not be repeated here except as they pertain to QLS.

The Vawters executed a note, dated February 19, 2007, in the amount of $328,000 with Defendant Paul Financial, LLC ("Paul Financial") in order to refinance their residence. (*See* Compl. (Dkt. # 1) at ¶¶ 2.1-2.2, 2.9, 2.13; Lowry Decl. (Dkt. # 22) Ex. A (Note).) The Note is secured by a deed of trust ("Deed of Trust"), which lists Paul Financial as the lender, MERS as the beneficiary, "acting solely as a nominee for Lender and Lender's successors and assigns," and First American Title Insurance Company

---

[1] No party has requested oral argument with regard to QLS's motion, and the court deems it to be unnecessary.

[2] On the present motion to dismiss, the court must accept all well-pleaded factual allegations in Plaintiffs Henry and Rose Vawter's ("the Vawters") complaint as true and view them in the light most favorable to the Vawters. *See Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).

("First American") as the trustee. (Compl. at ¶ 2.16.1[3]; Sullivan Decl. (Dkt. # 12) Ex. A (Deed of Trust).)

The Note has now changed hands from Paul Financial to Chase. In March 2007, Paul Financial notified the Vawters that Homecoming Financial would be servicing their loan. (Compl. at ¶ 2.15.1.) Approximately one month later, Homecomings Financial notified the Vawters that Washington Mutual Bank, which was subsequently acquired in part by Chase, would be servicing their loan. (*Id.*) The parties agree that Chase now has possession of the Note, which has been endorsed in blank. (Lowry Decl. Ex. A; *see* Supp. Resp. (Dkt. # 29) at 2.)[4]

The parties to the Deed of Trust also changed over time, and the Vawters allege a number of discrepancies in this regard that relate to their claims against QLS. First, in April or May 2009, MERS assigned its beneficial interest under the Deed of Trust to Chase. (Sullivan Decl. Ex. E; *see* Compl. at ¶ 2.17.)[5] Although the April 21, 2009 date on the assignment of the Deed of Trust by MERS to Chase predates Chase's appointment

---

[3] The complaint includes two sets of paragraphs 2.15 and 2.16. In this order, the court will refer to the first set as paragraphs 2.15.1 and 2.16.1 and the second set as 2.15.2 and 2.16.2.

[4] The Vawters dispute, however, when Chase obtained possession of the Note and characterize Chase in their complaint as merely the "purported" holder of the Note, alleging that they "cannot ascertain its real role in connection with their mortgage loan." (Compl. at ¶ 1.6.) The court, however, resolved this issue in Chase's favor in its prior order granting MERS's and Chase's motion for judgment on the pleadings. *See* Order at 20-21.

[5] The Vawters acknowledge that MERS is listed on the Deed of Trust as holding the beneficial interest, but contest whether MERS was actually entitled to serve as the beneficiary, asserting that "[t]he entirety of MERS's representations about its role and authority to act is false." (Compl. at ¶ 2.17; *see id.* at ¶ 2.16.1. The court, however, resolved this issue in favor of MERS in its prior order granting MERS's and Chase's motion for judgment on the pleadings. *See* Order at 16-19.

of QLS as trustee on April 24, 2009, the assignment was not notarized until several weeks later on May 19, 2009. (Sullivan Decl., Exs. C & E.) Both Chase and MERS acknowledge that MERS's representative neglected to sign the assignment until the date it was notarized on May 19, 2009. (*See* Chase's and MERS's Mot. (Dkt. # 11) at 7, n.4; Chase's and MERS's Reply (Dkt. # 21) at 3.) Thus, Chase's initial appointment of QLS as trustee on April 24, 2009 occurred prior to MERS's actual assignment of its interest in the Deed of Trust to Chase on May 19, 2009. Chase executed and recorded a reappointment of QLS as successor trustee on January 13, 2010 and January 19, 2010 respectively. (Sullivan Decl., Ex. D.) The Vawters allege that the timing error in the appointment of QLS as trustee renders the appointment improper. (*See* Compl. at ¶ 2.17.)

Second, the Vawters allege that there are no recorded instruments in King County's records concerning the assignment of the Deed of Trust from Paul Financial to MERS, or from MERS to Chase. (*Id.* at ¶ 2.16.2.) However, subsequent to the filing of the Vawters' complaint, the assignment of the Deed of Trust from MERS to Chase was recorded on October 9, 2010. (Resp. (Dkt. # 50) at 4; Sullivan Decl., Ex. E.)

The Vawters ultimately defaulted on the Note, which led to a nonjudicial foreclosure. (*See* Compl. at ¶¶ 2.13, 2.17.) On May 28, 2009, QLS, ostensibly acting as trustee under the Deed of Trust, recorded a notice of trustee's sale ("Notice"), and also caused the Notice to be posted at and mailed to the Vawters' residence. (Compl. at ¶ 2.17; Sullivan Decl. Ex. B (Notice of Trustee's Sale).) The court notes that MERS executed the assignment of the Deed of Trust to Chase on May 19, 2009. Thus, by the time QLS recorded the Notice on May 28, 2009, Chase had obtained the authority to appoint QLS as

1  trustee – even if Chase did not technically have that authority on the date it actually

2  executed the appointment (April 24, 2009).  The Notice scheduled the trustee's sale for

3  August 28, 2009.  (Compl. at ¶ 2.17; Sullivan Decl. Ex. B at 30.)

4      Prior to the trustee's sale, the Vawters filed this action in King County Superior

5  Court in an attempt to stop the nonjudicial foreclosure (Compl. at ¶ 2.15.1), and were

6  successful in having the sale discontinued.  Defendants removed the action to federal

7  court.  Shortly thereafter, Chase and MERS moved for judgment on the pleadings, which

8  the court granted with regard to these two defendants on April 22, 2010.  (Order (Dkt. #

9  30).)

10     QLS joined in Chase and MERS's motion (Dkt. # 14), but the court denied QLS's

11  request for dismissal at that time because it had not "address[ed] the Vawters' claims as

12  they relate to QLS or explain[ed] how its role as trustee affects the viability of those

13  claims." (Order at 26.)  In addition to a cause of action for temporary and permanent

14  restraint of the trustee's sale, the Vawters plead three causes of action against QLS: (1)

15  intentional infliction of emotional distress, (2) wrongful foreclosure and breach of the duty

16  of good faith under Washington's Deed of Trust Act ("DTA"), chapter 61.24 RCW, and

17  (3) violation of Washington's Consumer Protection Act ("CPA"), chapter 19.86 RCW.

18  QLS has now renewed its motion to dismiss these claims.  (Mot. (Dkt. # 49).)

19                        **III.   DISCUSSION**

20     A.   Standards

21     When considering a motion to dismiss under Federal Rule of Civil Procedure

22  12(b)(6), the court construes the complaint in the light most favorable to the non-moving

ORDER- 5

party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### B. Preliminary Matters

Generally, a district court may not consider any material beyond the pleadings in ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). However, the Ninth Circuit has carved out three exceptions to this rule. First, a court may consider material properly submitted as a part of the complaint. *Id.* Second, a court may consider documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Id.* Third, a court may take judicial notice of matters of public record. *Id*. at 689. Thus, the court has referred to certain exhibits

1 attached to declarations previously submitted by Chase and MERS with regard to their
2 earlier Federal Rule of Civil Procedure 12(c) motion.  (*See* Sullivan Decl. Exs. A-E;
3 Lowry Decl. Ex. A.)   These exhibits include the Vawters' original adjustable rate note
4 (Lowry Decl. Ex. A), the Deed of Trust executed by the Vawters (Sullivan Decl. Ex. A),
5 the notice of trustees' sale (*id.* Ex. B), Chase's initial appointment of QLS as successor
6 trustee (*id.* Ex. C), Chase's reappointment of QLS as successor trustee (*id.* Ex. D), and
7 the assignment of the Deed of Trust from MERS to Chase (*id.* Ex. E).  All of these
8 documents fall within either the second or third exceptions noted above, and thus are
9 appropriate for a court to consider on a Federal Rule of Civil Procedure 12(b)(6) motion
10 to dismiss.

11        In addition, the Vawters have submitted a declaration in conjunction with their
12 response to QLS's motion to dismiss.  (Huelsman Decl. (Dkt. # 51); *see also* Request for
13 Judicial Notice (Dkt. # 52).)  This declaration attaches three exhibits which the Vawters
14 ask the court to consider with regard to QLS's motion to dismiss.  As a part of its reply,
15 QLS moves to strike these exhibits on various grounds.  (Reply (Dkt. # 53) at 10.)  The
16 second and third exhibits are a petition for direct review filed with the Washington State
17 Supreme Court, as well as a California Court of Appeals decision, both of which pertain
18 to QLS in other matters.  (Huelsman Decl. Exs. 2 & 3.)  QLS does not object to the
19 authenticity of these documents.  (*See* Reply at 10.)  Both of these documents fall within
20 the exception noted above for public records, and therefore may be considered by the
21 court without converting this motion into one for summary judgment.  The first exhibit,
22 however, is a newspaper article from the Seattle Times, dated March 5, 2010,

concerning QLS. (Huelsman Decl. Ex. 1.) QLS rightfully objects to this exhibit on grounds of hearsay under Federal Rule of Evidence 802 (*see* Reply at 10), and the court excludes it on this ground.

### C. Washington's Deed of Trust Act

This action involves a deed of trust. (Compl. at ¶ 2.16.1.) A deed of trust differs from a standard mortgage because it involves not only a lender and a borrower, but also a third-party called a trustee. *See Kenzer v. Landover Corp.,* 942 P.2d 1003, 1007 n.9 (Wash. Ct. App. 1990). The trustee holds an interest in the title to the borrower's property on behalf of the lender, who is also called the beneficiary. *Id.* If a borrower defaults on his or her loan, the beneficiary may instruct the trustee to conduct a nonjudicial foreclosure instead of petitioning the court to initiate a foreclosure process. *See id.* at 1006-07. Under the DTA, the beneficiary (lender) may replace the trustee with a successor trustee to handle the foreclosure. RCW 61.24.010(2) ("[U]pon the . . . election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee.").

Although denominated as a trustee, the term trustee under the DTA is somewhat of a misnomer. *See, e.g., Monterey S.P. P'ship, v. W.L. Bangham, Inc.,* 777 P.2d 623, 628 (Cal. 1989) (discussing California's deed of trust act) ("The similarities between a trustee of an express trust and a trustee under a deed of trust end with the name. Just as a panda is not a true bear, a trustee of a deed of trust is not a true trustee.") (internal quotations and citations omitted). Indeed, the DTA states that "[t]he trustee or successor trustee shall have no fiduciary duty or obligation to the grantor or other persons having

ORDER- 8

an interest in the property subject to the deed of trust." RCW 61.24.010(3). Further, at the time that QLS initiated the foreclosure proceedings here, the DTA merely imposed an obligation upon the trustee to "act impartially between the borrower, grantor, and beneficiary." RCW 61.24.010(4) (amended July 26, 2009).[6]

### D. Wrongful Foreclosure

QLS has moved to dismiss the Vawters' claim for wrongful foreclosure. (Mot. at 8.) In its April 22, 2010 order, the court ruled with regard to the Vawters' claim for wrongful foreclosure against Chase and MERS as follows:

> The Vawters simply have not shown any reason to depart from the *Krienkle* court's conclusion that "there is no statutory basis supporting a claim for damages for wrongful institution of foreclosure proceedings." *Krienkle* [*v. Chase Home Fin., LLC,* No. 35098-0-II] 2007 WL 2713737, at *5 [(Wash. Ct. App. Sept. 18, 2007)]. The court is mindful that lenders must strictly comply with the DTA because the nonjudicial foreclosure process removes many protections borrowers and grantors have under a mortgage. *Amresco* [*Independence Funding, Inc. v. SPS Props., LLC*]*,* 119 P.3d [884] . . .886 [(Wash. Ct. App. 2005)]. Nevertheless, . . . it does not follow that a grantor or borrower can maintain a cause of action for damages for violation of the DTA where a trustee's sale is discontinued.

(Order (Dkt. # 30) at 14.) The court can find no basis upon which to distinguish this ruling with regard to QLS.

Further, the bases for the Vawters's claim for wrongful foreclosure against QLS are the same as the bases for their wrongful foreclosure claim against Chase and MERS.

---

[6] Subsections (3) and (4) of RCW 61.24.010 were added to the DTA by legislation in 2008, which became effective on June 12, 2008. The DTA was amended again in 2009 to alter subsection (4) to read: "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4). This 2009 amendment did not become effective until July 26, 2009, which was after the nonjudicial foreclosure was initiated in this action.

ORDER- 9

In its prior order, the court addressed the underpinnings of the Vawters's wrongful foreclosure claim and found them to be lacking. (*Id.* at 15-21.) First, the court has already ruled that "[e]ven accepting the Vawters' factual allegation that MERS exists to maintain records regarding the ownership of mortgages, this does not mean that MERS cannot hold a beneficial interest under the Deed of Trust." (*Id.* at 19.) Second, "Chase has submitted a copy of the Note, and the Vawters concede that Chase 'now has possession of the Note endorsed in blank. . . .'" (*Id.* at 20 (quoting Vawters' Supp. Resp. (Dkt. # 29) at 2.) Finally, although there is little doubt that Chase prematurely appointed QLS as successor trustee before MERS had assigned its beneficial interest to Chase (*id.* at 19), "the Vawters have not alleged that this error caused them prejudice or harm and have not explained how this error would affect any future nonjudicial foreclosure proceedings" (*id.* at 20). Further, as the court notes above, by the time that QLS filed the notice of trustee's sale here, Chase had acquired the authority to appoint QLS as successor trustee. (*See supra* at 4-5.) Thus, the court is at a loss to understand how the Vawters could have been prejudiced by the timing error that admittedly occurred here with regard to Chase's initial appointment of QLS.

      The Vawters also complain that the assignments of the Deed of Trust were not recorded. (Compl. at ¶ 2.16.2; Resp. at 3-4.) The DTA states that "[i]t shall be requisite to a trustee's sale . . . [t]hat the deed of trust has been recorded in each county in which the land or some part thereof is situated." RCW 61.24.030(5). Nevertheless, the court is unable to find any statutory requirement that all assignments of the Deed of Trust must also be similarly recorded, and the Vawters have failed to cite any. While the recording

ORDER- 10

of such assignments is undoubtedly the better practice and the failure to do so carries potentially detrimental consequences when considering priorities of debt, the court is unable to find any authority that requires the recording of assignments as a "requisite" to the institution of a trustee's sale. In any event, the assignment of the Deed of Trust from MERS to Chase has now been recorded (*see* Sullivan Decl., Ex. E), and once again the Vawters have failed to allege how the initial lack of recording prejudiced them in anyway.

Because the court can find no reason to distinguish its prior rulings with regard to this claim based on QLS's role as trustee under the DTA, the court grants QLS's motion to dismiss the Vawters' claim against QLS for wrongful foreclosure.

**E. Intentional Infliction of Emotional Distress**

QLS moves to dismiss the Vawters' claim for intentional infliction of emotional distress, also known as the tort of outrage,[7] on grounds that the Vawters have failed to plead all of the elements of the claim. (Mot. at 9-10.) The tort of outrage consists of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel,* 66 P.3d at 632. The first element requires proof that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

[7] The tort of outrage and intentional infliction of emotional distress are synonyms for the same tort. *Kloepfel v. Bokor,* 66 P.3d 630, 631 n.1 (Wash. 2003).

community." *Robel v. Roundup Corp.,* 59 P.3d 611, 619 (Wash. 2002) (quoting *Dicomes v. State,* 782 P.2d 1002, 1012 (Wash. 1989)).

In its prior order, the court dismissed the Vawters' claim for intentional infliction of emotional distress against Chase and MERS. In granting the earlier motion, the court found

> [T]he Vawters simply have not pleaded factual allegations sufficient to give rise to a genuine issue regarding whether Chase's and MERS's conduct was so extreme as to satisfy the first element of their claim, nor have they pleaded that the conduct actually caused them severe emotional distress. . . . Chase's and MERS's actions in connection with the nonjudicial foreclosure process, as alleged by the Vawters, may be problematic, troubling, or even deplorable, but these actions do not involve physical threats, emotional abuse, or other personal indignities aimed at the Vawters."

(Order at 23-24.) The same can be said of QLS's actions here. Further, QLS's role as "trustee" under the DTA does not render its actions any more "outrageous" than those of Chase or MERS under the facts alleged in the Vawters' complaint. As noted above, under the DTA, a "trustee" bears no fiduciary duty to the borrower. *See* RCW 61.24.010(3). Therefore, the court discerns no reason to distinguish its prior ruling with regard to QLS. The court grants QLS's motion to dismiss the Vawters' claim for intentional infliction of emotional distress.[8]

---

[8] QLS also moved to dismiss this claim on the basis of Washington's economic loss rule. (Mot. at 10-11.) While QLS's motion was pending, the Washington Supreme Court issued two new decisions reinterpreting its prior jurisprudence with regard to the economic loss rule, and announcing a new rule denominated the "independent duty doctrine." *See Eastwood v. Horse Harbor Found., Inc.,* ___ P.3d ___, No. 81977-7, 2010 WL 4361986 (Wash. Nov. 4, 2010) & *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.,* ___ P.3d ___, No. 82738-9, 2010 WL 4350338 (Wash. Nov. 4, 2010). In these decisions, the Washington Supreme Court not only

F.  **Consumer Protection Act**

Finally, QLS has moved for dismissal of the Vawters' claim for violation of the CPA.  (Mot. at 7-8.)  The elements of a CPA claim include:  (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.  *Panag v. Farmers Ins. Co. of Wash.,* 204 P.3d 885, 889 (Wash. 2009).

As QLS correctly points out, the Vawters' allegations concerning QLS's purported violations of the CPA are virtually identical to the allegations that the Vawters assert against Chase and MERS.  The specific allegations involving QLS include Chase's premature appointment of QLS as successor trustee, and QLS's alleged resulting lack of authority to serve as successor trustee.  However, by the time that QLS filed the notice of trustee's sale on May 28, 2009, Chase had acquired the authority to appoint QLS as successor trustee on May 19, 2009, when MERS executed its assignment of the Deed of Trust to Chase.  The CPA does not define "unfair and deceptive act or practice," but "[i]mplicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance."  *Nguyen v. Doak Homes, Inc.,* 167 P.3d 1162, 1166 (Wash. Ct. App. 2007); *see also Gordon v. Virtumundo, Inc.,* 575 F.3d 1040, 1065 (9th Cir. 2009).  The court is mindful of Washington's jurisprudence, which requires that lenders strictly comply with the

---

changed the doctrine's nomenclature, but modulated its formulation as well.  Because the court has dismissed the claim for intentional infliction of emotional distress on other grounds, there is no need for the court to consider this issue now.

requirements of the DTA and that courts strictly construe the DTA in the borrower's favor. *See Amresco Independence Funding, Inc. v. SPS Props., LLC,* 119 P.3d 884, 886 (Wash. Ct. App. 2005). Nevertheless, to hold that a mere error in the timing of QLS's appointment as trustee is a deceptive act or practice under the CPA would be in the court's view a misguided elevation of form over substance. This is particularly true here where there is no dispute that Chase presently holds the Note at issue, and that Chase had the authority to appoint QLS as successor trustee at the time that QLS recorded the notice of trustee's sale. In these circumstances, the timing error at issue could not be said to be "of material importance."

However, even assuming that the alleged conduct falls within the scope of the first three elements of a CPA claim, the Vawters have failed to plead factual allegations supporting the fourth and fifth elements of causation and damages. Pursuant to the DTA, they succeeded in restraining the foreclosure sale. Further, they do not dispute that they are in default of their loan. (*See* Compl. at ¶ 2.1; Resp. (Dkt. # 50) at 2.) As the court stated in its prior order:

> The Vawters have simply plead no actionable injury. Notably, no trustee's sale actually occurred, and the Vawters neither dispute their default under the terms of the Note nor challenge the proposition that nonjudicial foreclosure is appropriate generally.

(Order at 25.) The court dismissed the Vawters' CPA claims against Chase and MERS in its prior order, and can discern no logical nor legal reason for excluding QLS from the court's prior rationale. Therefore, the court grants QLS's motion to dismiss the Vawters' claim for violation of Washington's CPA.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS QLS's motion to dismiss (Dkt. # 49).

Dated this 23rd day of December, 2010.

JAMES L. ROBART
United States District Judge